GRIDER AND WIFE v. CLOPTON.

FRAUD—*What amounts to.*—Representations to amount to fraud must be of a decided and reliable character, holding out inducements, to make the contract calculated to mislead the purchaser and induce him to buy on the faith and confidence of such representations, and in the absence of means of information to be derived from his own observation and information, and from which he could draw conclusions to guide him in making the contract, independent of the representations of the vendor.

SAME—*When recision of sale sought.*—When one seeks to rescind the sale of land, if the contract be executed and the conveyance made, and the vendee entered into possession, he is presumed to have examined the evidence of title, and if he was induced, by fraud, to accept the conveyance, if not evicted, he must show title paramount.

APPEAL FROM PHILLIPS CIRCUIT COURT.

HON. JOHN E. BENNETT, *Circuit Judge.*

*U. M. Rose*, for Appellants.

This bill should have been dismissed without prejudice, so that appellee might begin a new suit whenever he should acquire a title that would justify such a step. *See Wakefield v. Johnson*, 26 *Ark.*, 506.

*Garland & Nash*, for Appellee.

1st. The lien of the appellee for the unpaid purchase money was good—2 *Wash. Real. Prop.* 82, 92 *et seq.*

2d. As to the allegations of fraud, there is no averment that Burgett could not have ascertained the facts for himself, and hence these allegations are of no moment—11 *Ark.* 58 *et seq.*; *Adams Eq.* 179, 187 ; *Broom's Legal Max.* 693, 694.

3d. We submit upon the law and the facts of the whole case there is no good reason why the decree should not be affirmed. 1 *Sugd. on Vendors* 324, 328; 432 *and note*, 436 ; *See Folley v. Cowgill*, 5 *Biford* 20 ; *Morgan v. Shopp*, 7 *Porter* (*Ind.*) 540 ; *Diffindorf v. Gage*, 7 *Barb.* (*N. Y.*) 21 ; *Ib.* 66, 68; 10 *Hump.* (*Tenn.*) 579, 581, 84, 85, 86 ; *Hilliard on Vendors*, 329, 30, 31 *and* 32 ; 22 *Ark.* 464 ; 13 *Ib.* 499.

GREGG, J.—On the 14th day of December, 1865, H. Clopton sold and conveyed, by deed, to Nancy P. Burgett, one of the appellants, who has since intermarried with Jesse Grider, certain lands for the sum of $30,000; ten thousand of which was paid at the time, and the residue of $20,000 to be paid on or before the 1st of May thereafter, retaining a lien, by special stipulation in the deed, for the balance of the purchase money. The tract sold containing, in a connected body, the quantity of eight hundred and seventy-eight (878) acres. At the May term, 1867, Clopton filed his bill to foreclose his vendor's lien for the purchase money remaining unpaid, admitting subsequent payments to the amount of $8,500.

Grider and wife, by answer, cross bill and amended cross bill, assert that the lands were not sold to said Nancy P., nor had she anything to do with making the purchase, but that, although the deed was made to her, it was bought by her father, Isaac Burgett, since deceased. That her said father, being a man of large means, desired to make an investment for the said Nancy P.; that Clopton, knowing this fact, made divers representations in regard to his plantation, viz: that

it contained 500 or 550 acres of tillable land, an orchard of 25 or 30 acres of the finest description of fruit; that it was in a connected body; that it was equal in regard to fertility to any of the table lands of Phillips county, etc. That her said father, being then in ill health, was unable to examine said plantation, and did not examine it, but purchased it, relying solely on the representations of Clopton, taking the deed set out by Clopton, first paying him $10,000, and agreeing to pay the remainder as set out in the original bill. Avers that while it is true, that there are 550 acres of cleared land therein, yet that 150 of it is hill side, so washed by ravines and gullies, during the war, as to be wholly unfit for cultivation. Avers that the orchard does not contain the number of acres represented by Clopton, but only eighteen, nor does it contain the quality of fruit represented by him. Avers that her father was to pay the balance of said sum of purchase money out of his own means, and never consulted said Nancy P. about said purchase. They make Henry E. and Isaac Burgett, administrators of the estate of her said father, parties defendant to the cross bill, and aver that Clopton and the said administrators well knew that the same was intended to be and is a charge against the estate of her father. That Clopton well knew that the many representations he made in regard to the land, and on the faith of which her father purchased, were false, etc. They further aver that, the contract having been made with her father, and agreed to be paid out of his moneys and estate, if any sum is due on said lands, the same should in equity be paid by his personal representatives, Henry E. and Isaac Burgett, jr., out of the estate of said Isaac Burgett, deceased, and make said Henry E. and Isaac, parties defendant to their cross bill.

By amended cross bill, they further charge that, of the lands conveyed to her (Nancy P.) by metes and bounds, Clopton was not at the time of said sale and making of said conveyance, the owner, nor had he any title whatever thereto of about 26 acres; and also charge that he sold all the lands

contained in his enclosure, and did not convey, nor does the lands described, in the deed, cover 26 acres of the land he purported and represented he was selling, and pray answers from the administrators of the estate of her father, and from Clopton, and that Clopton be required to refund all moneys paid him on the purchase money, and the said sale be rescinded; that if that be not done, then that an abatement be made for the lands conveyed, to which he had no title, and also for the land that he represented he was selling, but did not convey, and that the residue of the purchase money be declared a charge on the estate of Isaac Burgett, deceased.

Henry and Isaac Burgett, administrators of Isaac Burgett, deceased, answer the cross bill of Jesse and Nancy P. Grider, and aver that, from their own knowledge, at the time of the sale of said lands, and while negotiations for their sale were pending, Nancy P. was a *femme sole* of full age; that, their intestate intending to give her the sum of $15,000, offered her the choice between taking that sum in cash, or he would invest it in part payment of the sum demanded by Clopton for his plantation, and that, after due deliberation, she chose the latter, and deny that the purchase was made without her knowledge. They also aver that their intestate never intended to advance to said Nancy P. or pay, of his own means, on said purchase, more than the sum of $15,000. This sum they aver to have been fully paid; first, by their intestate, in his lifetime, in paying the $10,000, at time of conveyance, and subsequently by themselves as administrators, out of the assets of the estate, by payment of $5,000 more, and that any additional sum over the $15,000 that has been paid, has been in pursuance of arrangement with said Nancy P. and not out of the estate.

They further say, in their answer, "that while they do not know that their said intestate, in buying said lands, as agent for his said daughter, Nancy P., did not depend upon the representations of said Clopton, they do not believe that he did, as they well remember to have heard him say, before said

trade was finally closed, that he had rode over said land, and had fully examined it; that part of it was sometimes washed, but that having cultivated hill lands in Missouri, he knew exactly how to manage it, and that he thought Clopton was mistaken in saying the orchard contained twenty-five acres; that he did not think it contained over twenty acres, if so much."

Clopton answered the cross bill of the Griders; denies the making of any false or fraudulent representations to Isaac Burgett, to induce him to make the purchase; denies that said Burgett relied upon any representation made by him, and avers that he (Burgett) rode over the place, examined every part of it, and particularly all the cleared lands, including the hill side and the orchard, and expressed himself well pleased with it, and that the purchase was made after full and careful examination of the lands, said Burgett relying upon his own judgment. He admits that in the description of the lands, set out in the conveyance, there is twenty-six acres described, to which he has no title, and that he represented himself to own and sell twenty-six acres which he did not, by his deed, convey, and offers to make good title to said twenty-six acres of land to said Nancy P. He avers that said Nancy P. was put in possession, and is now in possession of all the lands (878 acres) intended to be sold and conveyed; that in conveying to her the said twenty-six acres to which he had no title, he intended no fraud, and believed he was correctly describing the lands; that the same was a mistake, growing out of error in former descriptions, etc.

On the pleadings and proofs, the court decreed in favor of Clopton, and found due him the sum of $18,132 92, and that the same should be paid by Jesse and Nancy P. Grider, by a day named in the decree; declared the same a lien on the lands, and for their sale etc. From this decree Jesse and Nancy P. Grider appealed.

We have carefully examined the testimony in this case, and conceive it to be amply established by the pleadings and

proof, that Isaac Burgett, prior to the purchase of the lands of Clopton, made a personal examination of the place; that he saw the whole of it, at least, of all that had been ever cultivated. This is testified to by four witnesses, and nothing to the contrary appears in the record. That after he made this examination, negotiations for its sale and purchase were pending for several weeks. That he was a man of large experience in lands, and a successful planter, and one who, in matters of this kind, relied on his own judgment.

The testimony shows that Clopton, in his representations as to the number of acres of cleared land, never expressed himself positively, but thought there was 500 or 550 acres, and was willing, before its sale, to have the lands measured; so too, in regard to the orchard, he thought there was about 25 or 30 acres, and that it had always been called so by the overseers. In both of these points, Mr. Burgett seems to have made personal examination before the sale, and to have thought there was not so much of either as Clopton, so that he could not have been deceived by any representation Clopton made, or be said to have relied upon them.

The testimony also shows that he examined the hillside, saw its condition, and thought he knew for what purpose it was available. Nor do we find that the averments, set up in the cross bill of Jesse and Nancy P. Grider, of fraudulent misrepresentations on the part of Clopton, and that it was upon reliance upon the statements of his, that induced the purchase, to be sustained by the proof.

It is also affirmatively established by Clopton, uncontradicted by any proof, that the appellants were put into immediate possession of all the lands intended to be sold and conveyed, viz: the Clopton plantation, containing 878 acres; and have ever since been possessed of the same; that the description of the 26 acres, in Clopton's conveyance, to which he had no title, was a mistake, untainted by any fraud on the part of Clopton, and on the trial of the cause, Clopton, who had procured a perfect title, tenders and files with the exhibits,

a conveyance for the 26 acres omitted in the original deed, and which last named tract appears to have been at all times in the possession of appellants.

When the sale was finally closed, there were no notes or other obligations given for the purchase money, and the answers of Henry and Isaac Burgett to the cross bill of appellants, being directly responsive to inquiries of Jesse and Nancy P. Grider, disclose that their intestate purchased the place, as agent and in behalf of Nancy P., in pursuance of arrangements made with her, and that he intended to pay only the sum of $15,000 of his own means. In this, appellants seem to have acquiesced, for the administrators paid $5000 out of the assets of the estate, and the sums of money paid in excess of $15,000 ($3500) were paid by Henry E. Burgett out of his private means, as an advancement to his sister, the said Nancy P., and by arrangement with her.

The law applicable to this case is well settled, and does not require elaboration. Where a party seeks in equity to rescind a contract, for fraudulent representations made by the vendor, "they must be of a decided and reliable character, calculated to mislead the purchaser and induce him to buy on the faith and confidence of such representations, and must have been made in the absence of the means of information on the part of the purchaser, to be derived from his own observation and inspection, and from which he could draw conclusions to guide him in making the contract, independent of the representations of the vendor." *Yeates et al. vs. Pryor*, 11 *Ark.*, 58.

Where one has the opportunity to examine for himself and fails to do it, but purchases on the representations of another, if he be deceived, he must suffer from carelessness and want of care. So, in a case like the one at bar, where the means of information were not only accessible, but were availed of, and a personal examination made, equity will not allow him to say that he was induced to purchase on the statements and representations of the vendor. *Morgan vs. Snapp*, 7 *Porter*

(*Ind.*), 537 ; *Bolton vs. Branch*, 22 *Ark.*, 455 ; *Adam's Equity,* 179, 187.

So too, in regard to title, where one seeks to rescind the sale of land, if the contract be executed and conveyance made, and the vendee entered into possession, he is presumed to have examined the evidence of title, and if he was induced by fraud to accept the conveyance, if not evicted, he must show title paramount. In the case at bar, the failure to originally convey, was by mistake, and for only a small portion, and even were there title paramount, or had the appellants been evicted, equity would not rescind the contract, but would allow an abatement. In the case at bar, the vendor procures complete title, and to correct the mistake, tenders and exhibits a conveyance of the same to appellants. If, at most, appellants could have only asked an abatement for the value of the 26 acres, if Clopton could not have made good conveyance, they certainly cannot complain that a court of equity has permitted him to make them good title and enforced a performance of the contract.

Where the vendee accepts a deed, and possession, and has not been disturbed in his possession, and there has been no fraud, there can be no recision of the contract at his instance. *Bolton vs. Miller*, 15 *B. Mon.*, 626 ; *Sugden on Vendors*, 432 (*n.* 1).

All the questions raised by this record were fully discussed and settled in the case of *Yeates et al. vs. Pryor*, 11 *Ark.*, 583, and is followed as the law of this case.

The decree of the court below is in all things affirmed, and the case remanded to the Circuit Court of Phillips county for such further proceedings as are necessary to carry the decree into execution.

BENNETT, J., being disqualified, did not sit in this case.

HON. W. I. WARWICK, *Special Supreme Judge.*