CHERRY v. BRIZZOLARA.

Opinion delivered February 15, 1909.

1. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE.—To entitle a party to reform a deed upon the ground of mistake, it must be clearly shown that the mistake was common to both parties, and that the deed as executed does not express the contract as understood by either of them. (Page 312.)

2. SAME—MISTAKE—SUFFICIENCY OF EVIDENCE.—While equity will reform a written instrument on account of a mutual mistake if it does not reflect the intention of either party, yet the proof of such mistake must be clear, unequivocal and decisive. (Page 313.)

3. FRAUD—EQUAL OPPORTUNITY OF KNOWLEDGE.—When two persons are dealing with each other at arm's length, and there is no actual relation of trust or confidence between them, neither is under any duty, in the absence of inquiry, to disclose facts which are equally within the means of knowledge of the other. (Page 315.)

4. EASEMENT—WHEN IMPLIED.—Where the owner of a lot upon which are situated two stores having a party wall conveys the south half of the lot upon which the party wall is situated, with covenant against incumbrances, there is no implied reservation of an easement in favor of the grantor to continue to use the party wall unless such easement is an absolute necessity for the use of the north half of the lot, and such necessity is not shown if a similar wall might be erected on the north half of the lot by reasonable trouble and expense. (Page 316.)

5. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A chancellor's finding will be sustained on appeal unless clearly against the preponderance of the evidence. (Page 318.)

6. PARTY WALL—INJUNCTION AGAINST USER.—Where the owner of a lot containing two stores having a party wall conveys the south half of the lot upon which the wall is situated, and the grantee for five years acquiesced in the use of the wall by the grantor, equity will not enjoin the grantor from continuing to use such party wall so long as condi-

tions remain unchanged, and it does not appear that the grantee intends in good faith to alter such wall.  (Page 319.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed in part.

*Moore, Smith & Moore,* for appellant.

If there is such knowledge as makes it inequitable for the purchaser to retain an advantage   acquired by him, the court will deal as summarily wtih that inequitable position of the party as in case of actual fraud.   52 Conn. 483; 44 N. Y. 525. The prayer for general relief was broad enough to have enabled the court to direct a decree in conformity with the evidence. 72 Ia. 677; 77 N. Y. 226.   An implied easement in a party wall passes to the vendee of one of the buildings.   61 N. E. 240; 80 Ky. 391; 44 Am. Rep. 484.

*W. L. & D. D. Terry,* for appellee.

The fact that the mistake was common to both parties must be clearly proved.   75 Ark. 292; 74 *Id.* 339; 79 *Id.* 261.   Fraud is a conclusion to be drawn from certain facts, and not the facts themselves.   34 Ark. 71.   The facts and circumstances constituting the fraud relied on for relief must be stated in the bill.   14 Ark. 363; 77 *Id.* 355.   Fraud is the concealment of those facts which one party should communicate to the other. Story's Eq. Jur. § 148; *Id.* 207.   A court of equity will not undertake to relieve a party from the consequences of his own carelessness.   47 Ark. 339; 75 *Id.* 272; 74 *Id.* 71.   The fact that the foundation wall rests partly on each lot does not make it a party wall.   83 Ark. 152; Tied. on Real Prop. § 620.   A grantor has no right of easement by implied reservation out of the thing granted.   1 H. & N. 922; L. R. 12, Ch. Div. 31; 10 Jur. N. S. 111; L. R. 2 Ch. 486.   An easement will be implied only when the burden is strictly necessary.   21 N. Y. 506; 30 N. E. 980.   The appellee's claim to an easement must be based on a contract.   2 N. E. 182; 134 N. Y. 385; 45 N. Y. Supp. 31; 68 N. Y. Supp. 752; 32 S. C. 130; 17 Me. 169; 62 Md. 462; 126 Wis. 263; 7 Allen 369; 185 Mass. 371.

FRAUENTHAL, J.   On June 1, 1900, the appellee, L. W. Cherry, for the consideration of $13,250, conveyed by warranty deed to the appellant, A. Brizzolara, a lot in the city of Little

Rock, Arkansas, which is described in said deed by metes and bounds as follows: "the south half (½) of lot four (4) block five (5) of the city of Little Rock, Ark., being 25 feet front on Main Street;" and in July, 1905, he instituted this suit against the appellee, A. Brizzolara, in the Pulaski Chancery Court seeking to reform said deed by correcting the description of the land. He alleged that by mutual mistake on the part of both parties the land was described in the deed as above set forth, when, according to the intention of both parties, it should in effect have been described as "the south 24 feet and 3 inches of lot 4, block 5, city of Little Rock." He alleged that on June 1, 1900, he was the owner of lot 4 in block 5, city of Little Rock, together with the buildings situated thereon; that there were two store buildings situated on said lot 4, and that there was and is a division wall between the said store houses, and that he only intended to sell, and that defendant only intended to purchase, the store house and land situated on the south part of said lot 4 and only to the middle of the division wall between the two stores.

The defendant in his answer denied that any misdescription was made in said deed; denied that the alleged misdescription was the result of mutual mistake; and alleged that the description of the property as made in the deed correctly describes the property purchased and intended to be purchased by defendant. Subsequently the defendant filed an amended answer and cross-complaint in which he alleged that the above-mentioned division wall is situated entirely on the south half of lot 4 which was conveyed and sold to defendant, and asked that plaintiff be enjoined from asserting any estate or claim in said wall, and from any use of said wall or any part thereof.

Thereafter the plaintiff filed an amendment to the original complaint and an answer to the cross-complaint in which he alleged that the above wall between the store house bought and owned by defendant and the store house immediately north of and adjacent to it, which was retained by and is now owned by plaintiff, was and is a party wall; and avers that both plaintiff and defendant are entitled to use the wall; and asks that, in event plaintiff is not entitled to the relief of reformation of the description in said deed, he have a decree which will protect him

in his right to the use of said wall, and that defendant be enjoined from molesting him in the enjoyment of such right.

The defendant denied all these allegations of the cross-complaint, and denied the right to plaintiff to any easement in the property conveyed to him by said deed.

1. It is contended by the plaintiff that by the mutual mistake of both parties the property sold by him to defendant was misdescribed in the deed, and on this account the deed should be reformed so as to correct the description.

It appears from the testimony that the plaintiff owned lots 3 and 4 in block 5 of the city of Little Rock, containing 100 feet fronting on Main Street and running back 140 feet in depth. Upon these 100 feet there were improvements consisting amongst other things of four store houses. Each of the above lots 3 and 4 contained 50 feet, so that the south half of lot 4 contained 25 feet. Next to and adjoining the south half of lot 4 the defendant owned a strip of ground 20 feet front on Main Street with a building thereon. The plaintiff testified that when he sold and conveyed to defendant the south half of lot 4 he actually intended to sell him only the store house situated thereon and the extent of ground which the store house covered; that the store house covered 24 feet and 3 inches only of the south half of lot 4, and that was really the property which he intended to sell and convey. That, inasmuch as the 100 feet of property owned by him had four store houses situated thereon, he assumed that each store house covered 25 feet, and on this account described the property sold to defendant as set out in the deed; and that by this mistake the property was misdescribed in the deed.

The defendant, on the contrary, testified that he desired to purchase from the plaintiff the entire south half of lot 4, and intended to purchase 25 feet of ground, and not simply the store. That, inasmuch as he owned a narrow strip of ground immediately joining the south half of lot 4, he desired to expand the width of the property so as to make it more marketable; and to be better advised as to the exact extent and location of this south half of lot 4 he measured it and found that it contained 25 feet, and that it took in the store building thereon and the north wall thereof. And, being satisfied himself to this, he bought the

property from defendant, intending to purchase the entire 25 feet, being the south half of lot 4. He testified that it was upon the faith of obtaining 25 feet and the entire south half of lot 4 with all improvements thereon that he paid the amount of the price agreed on. That there was no mistake made by him in the description of the property as set out in the deed, but that on the contrary it correctly describes the property.

It would serve no useful purpose to give in detail the various circumstances introduced in evidence on both sides to sustain the respective positions of the parties, nor the testimony of the other witnesses who were introduced to corroborate each in his respective contention. The chancellor found that the defendant by his purchase and deed understood and intended to purchase the whole of said south half of lot 4 being 25 feet front on Main street, and the whole of the north wall thereon; and we cannot say that the proof is clear, unequivocal and decisive that a mutual mistake was made by both plaintiff and defendant in the description of the property. •

This court has held that, to entitle a party to reform a deed upon the ground of mistake, it must be clearly shown that the mistake was common to both parties, and that the deed as executed does not express the contract as understood by either of them. *Varner* v. *Turner,* 83 Ark. 131.

Although a court of equity may reform a written instrument on account of mutual mistake if it does not reflect the intention of both parties, yet the proof of such mutual mistake must be clear, unequivocal and decisive. *McGuigan* v. *Gaines,* 71 Ark. 614; *Webb* v. *Nease,* 66 Ark. 155; *Denny* v. *Barber,* 72 Ark. 546; *Goerke* v. *Rodgers,* 75 Ark. 72; *Marquette Timber Co.* v. *Chas. T. Abeles Co.,* 81 Ark. 421; *Mitchell Manufacturing Co.* v. *Kempner,* 84 Ark. 349. And such mistake must appear beyond reasonable controversy. *Arkansas Fire Ins. Co.* v. *Witham,* 82 Ark. 226.

2. It is next contended that the defendant perpetrated a fraud upon the plaintiff in obtaining the description in the deed. It is contended that plaintiff did not intend to sell the property as described in the deed as 25 feet front on Main Street, and made a mistake in describing it; and that defendant knew of his mis-

take, and so took an unfair advantage of plaintiff and imposed upon him.

The testimony shows that when the trade was agreed upon the defendant paid $25 upon the purchase money, and the plaintiff executed a receipt as follows:

"Received of A. Brizzolara $25 as part payment of $13,250, being the purchase money for the south half of lot 4, block 5, the same being 25 feet front on Main Street. [Signed]   L. W. Cherry."

This receipt was entirely in the handwriting of the plaintiff. After that the plaintiff furnished an abstract of title to the property, and in the abstract the property was described as the south half of lot 4, block 5, city of Little Rock.   After all these negotiations the plaintiff himself prepared and wrote the deed, and in this conveyance to defendant he described the property as follows:   "The south half of lot 4 (4) block five (5) of the city of Little Rock, Ark., being 25 feet front on Main Street."

Can it be said under this proof that the plaintiff did not intend to sell to defendant 25 feet of ground?   This property is situated in a populous city, where property is quite valuable, and where it is sold by the front foot.   The total price paid for such property depends largely upon the number of feet frontage.   Here the plaintiff prepared and himself wrote two instruments, in each of which he described the property as containing 25 feet frontage.   Under these circumstances can it be found that the plaintiff, who testified that he has had large experience in real estate transactions, made an error in the number of feet sold when he must have known that the total price would depend largely upon the exact number of feet so sold?   Is it not rather more probable that the plaintiff intended to sell and did sell 25 feet frontage on Main Street; and, if he made any mistake, it was only a mistake by him as to what buildings and improvements were situated on this 25 feet frontage?   But, however that may be, the defendant testified that he did not know that plaintiff was making or made any mistake in the description.   He testified that he understood he was purchasing and intended to purchase 25 feet frontage and paid the price on that basis.   If the description should be corrected and thereby the number of feet frontage reduced, it should

reduce the price which the defendant would have been willing to pay for the property.

Now, plaintiff does not ask to have the sale and deed cancelled and annulled for fraud, and does not offer to pay back the purchase money; but he is seeking to change the contract, so far as defendant claims to have understood it and entered into it, by reducing the quantity of the property and still retaining the entire price.

It is not claimed by plaintiff that defendant did any act or made any statement or suggestion to mislead him. He had every opportunity to advise himself of the exact extent of ground which the description as contained in the deed covered. If he did not do this and sold the property by metes and bounds, as he has done in this case, he has no cause for complaint of which the court can take notice.

This court has said that when the means of information are open to both parties alike, so that by ordinary diligence and prudence each may be informed of the facts and rely upon his own judgment in regard to the thing to be performed or the subject-matter of the contract, if either fails to avail himself of his opportunity, he will not be heard to say he has been deceived. A court of equity will not undertake to relieve a party from the consequences of his own inattention and carelessness. *Yeates* v. *Pryor,* 11 Ark. 66; *Grider* v. *Clopton,* 27 Ark. 244; *Gammill* v. *Johnson,* 47 Ark. 335; *Storthz* v. *Arnold,* 74 Ark. 68.

In this case there was no relation of trust or confidence existing between the parties. It is the general rule that when persons are dealing with each other at arm's length and there is no actual relation of trust or confidence between them, neither is under any duty, in the absence of inquiry, to disclose facts which are equally within the means of knowledge of both; and if one fails to do so, he is not guilty of fraud. 14 Am. & Eng. Enc. Law (2d Ed.), 72. But in this case, after a careful examination of the evidence, we are unable to say that the proof is clear and decisive, either that the plaintiff did not intend to sell 25 feet frontage on Main Street and the property as it is described in the deed, and so made a mistake in the description, or that defendant knew of said mistake.

3. It is next contended that the plaintiff is entitled to a right of easement in the north wall on the south half of lot 4 for support of his store house located on the lot adjoining it. Learned counsel for appellant found this right upon the doctrine of the law that when one part of an estate is dependent for its enjoyment on some use in the nature of an easement in the other part, and the owner conveys either part without express provision on the subject, the part so dependent, thence called the dominant estate, carries or reserves with it an easement of such use in the other, thence called the servient estate. In this case it is contended that appellant owned lot 4, upon which were two stores; that the store-house situated on the north half of lot 4 was dependent upon the use of the wall on its south side and located on the south half of lot 4; that when he sold one of the two lots, and thus severed the ownership, there was a right or privilege reserved, by implication, to the north half of lot 4, in the use of the wall on the south half of lot 4 for the support of the house on the north half of lot 4, which thus became the dominant estate; and that the south half of lot 4 owed the service to the adjoining lot, and thus became the servient estate. But there is a marked difference between an implied grant and an implied reservation of an easement in the conveyance of the dominant and servient estate. Where a man grants the dominant estate, he grants with it everything necessary to its enjoyment; and by the grant there passes by implication to the grantee all those continuous and apparent easements which are necessary to the reasonable enjoyment of the property granted, and which have been and are at the time of the grant used by the owner of the entirety for the benefit of the part granted. It is founded on the principle that the grantor shall not derogate from his grant and render that which he has granted less beneficial to his grantee. But where the owner has sold and granted the servient estate, and attempts to retain by implied reservation the easement for the estate he retains, the matter stands on a different footing. The grant is taken most strongly against the grantor. If the grantor intends to reserve any right over the tenement granted, it is his duty to reserve it expressly in the grant. As a grantor cannot derogate from his own grant while a grantee may take the

language of the deed most strongly in his favor, the law will imply an easement in favor of a grantee more readily than it will in favor of the grantor.

And so the weight of authority is that where there is a grant of land with full covenants of warranty and without express reservation of easement, there can be no reservation by implication unless the easement is strictly one of absolute necessity. Washburn on Easements and Servitude (4th Ed.) page 105, sec. 42b; page 107, sec. 42c; Jones on Easements, sec. 102; 14 Cyc. 1168-1171.

In the case of *Crosland v. Rogers*, 32 S. C. 130, it is held that, in order to establish an easement by an implied reservation, where there has been a unity of possession and a subsequent sale of a portion of the land over which the easement is claimed, such easement must have been apparent, continuous and necessary, the term "necessary" meaning there could be no other reasonable mode of enjoying the dominant tenement without the easement; there should be an element of absolute necessity.

In the case of *Burns v. Gallagher*, 62 Md. 462, it is held: "That no easement or *quasi* easement can be taken as reserved unless it be *de facto* annexed and in use at the time, and it be shown moreover to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. And such necessity cannot be deemed to exist if a similar way or easement might be secured by reasonable trouble and expense, and especially not if the necessary way or easement could be provided through the grantor's own property."

In the case of *Sloat v. McDougal*, 9 N. Y. Supp. 631, the court says: "It seems to be the fairly settled rule in this State that the vendor of a lot carved out of a larger plat owned by him can impose no servitude upon the lot so sold in favor of the portion retained by him in derogation of his grant without an express reservation to that effect in the grant."

In this case the court refers to the case of *Lampman v. Milks*, 21 N. Y. 507, relied upon by counsel for appellant and says: "The intimation of Selden, J., in *Lampman v. Milks*, 21 N. Y. 507, that the rule in respect to easements is the same when the

servient estate is first conveyed as when the dominant estate is conveyed is mere *obiter dictum."*

In the case of *Paine* v. *Chandler,* 134 N. Y. 385, it is held that the case of *Lampman* v. *Milks, supra,* applies only to implied grants, and does not apply to implied reservations, and that court further says: "In this State the rule of strict necessity applies to implied reservations." *Johnson* v. *Jordan,* 43 Mass. 234; Gale on Easements, 123-132.

In the case of *Wilmurt* v. *McGrane,* 45 N. Y. Supp. 32, that court says: "It is deemed now to be well settled that where the owner of two parcels of land conveys one by an absolute unqualified deed, an easement will be implied in favor of the land retained by the grantee against the land conveyed only where it is apparent, continuous and absolutely necessary for the enjoyment of the former. * * * * It is apparent in this case that the right to light through the windows in the tenement house is not absolutely necessary for the enjoyment of the premises. It may be convenient in order that the premises may be used for tenement house purposes, but there is no pretense that the premises are not useful or valuable for any other purpose, and therefore there is no necessity for the reservation."

In the case of *Dillman* v. *Hoffman,* 38 Wis. 559, that court says: "We may say, however, in passing, that it is always safest to let written contracts speak for themselves. This rule is often relaxed with doubtful expediency. Parties ought to make their own contracts complete. * * * * Every conveyance should contain 'the certainty of the thing granted.' * * * * It is often difficult, as the cases show, to determine what shall be implied in conveyance by way of grant or reservation of easement; what parties who might have spoken shall be held to intend by their silence."

From this it follows, and we hold, that, before there can be an implied reservation of an easement in favor of the grantor in the thing granted by him, it must be shown that it is a strict and absolute necessity for the enjoyment and use of the property retained. And such necessity is not shown if a similar use and enjoyment of the property might be secured by reasonable trouble and expense.

The chancellor found "that all parts of the store house and

roof thereof now owned by plaintiff and immediately north of said storehouse of defendant can be supported by a wall built on plaintiff's ground on the north half of lot 4, and that it is not a matter of strict necessity that any part of plaintiff's said storehouse should have the support of any part of defendant's north wall." We cannot say that this finding is not supported by the evidence in the case, or that it is against the weight of the evidence. A chancellor's finding will be sustained on appeal unless clearly against the preponderance of the evidence. *Whitehead* v. *Henderson,* 67 Ark. 200; *Hinkle* v. *Broadwater,* 73 Ark. 489.

The appellant conveyed the property to appellee by warranty deed with full covenants against any claim or incumbrance of any kind, and especially any claims or incumbrances created by him. The right of an easement in the wall located on the property would work an incumbrance thereon. It would prevent the right of appellee to change, alter or tear down the wall at his will. Without being absolutely necessary for the enjoyment and use of the lot retained by appellant, should this easement be granted to him, it would work an injury to appellee in his free use of the wall and the property so conveyed to him. We are of the opinion therefore that the decree of the chancellor denying the appellant's claim for reformation of said deed is correct, and that appellant is not entitled to an easement in said south half of lot 4 or in said north wall located thereon.

But in his cross-complaint the appellee asks for an injunction against appellant restraining him, amongst other things, from asserting any claim whatever to the use of said wall or of any part thereof, on the ground that such use causes appellee an irreparable injury. Appellee is hereby seeking affirmative relief. In working out its remedies a court of equity should mould the same so that they will not result in an inequity to either party and will not be inconsistent with the legal rights of either party. In order to determine whether it would be equitable to enjoin appellant from the present use of said wall in its present condition, it is necessary to consider the situation and condition of the property at the time of the conveyance, the attitude and conduct of the parties relative thereto then and since and the condition thereof at the institution of this suit.

When the appellee purchased the property, this wall was

used to support the house situated on the adjoining lot retained by appellant. This was apparent to appellee, and by his silence he acquiesced in such use continuously for five years thereafter, and up to the time of the institution of this suit appellee in the same manner acquiesced in the same use of said wall; and immediately before the institution of this suit appellee agreed to lease to appellant the said use of the wall for the nominal sum of one dollar per annum. Thus by his conduct and attitude toward the use of said wall he has permitted a condition to exist and continue relative to the use of said wall by appellant which should not be changed or abridged until there shall arise an actual change in the condition of said wall by substantial alterations in good faith or destruction thereof by appellee, or until appellee shall actually and in good faith intend and determine to substantially change, alter or tear down said wall. The appellee should have and does have the full right to substantially change and alter said wall by building to or tearing down, but until that is actually done or actually and in good faith determined to be done by appellee the appellant should retain the present and temporary use he has of said wall and retain such use as long as the wall is permitted by appellee to remain in its present condition and to the extent only that he is now using the same. In this cross complaint the appellee does not allege, and the evidence does not show, that the said wall has been changed, altered or destroyed since the purchase of the property by appellee, or that the use of said wall by appellant has been other than his use thereof at the time of said purchase; nor does appellee allege, and the evidence does not show, that the appellee has determined in good faith to substantially alter, change, build on or tear down said wall.

So much of the decree, therefore, as enjoins and restrains the appellant from the present and temporary use of the wall in its present condition and to the present extent of said use is reversed, and the decree of the Pulaski Chancery Court in all other respects and terms is affirmed. And this cause will be remanded with directions to the lower court to enter a decree in accordance with this opinion.

McCulloch, J., not participating.