### RIGGS v. BUCKLEY.

4-3545

Opinion delivered October 8, 1934.

*G. L. Grant*, for appellants.

*James B. McDonough*, for appellees.

SMITH, J. A complaint containing two counts was filed on December 14, 1932, against J. H. and A. M. Buckley by the City National Bank of Fort Smith, for itself individually and as agent and trustee for certain named plaintiffs, among whom were J. A. Riggs and

P. L. Riggs, his wife, who filed an answer and cross-complaint against the bank and against I. H. Nakdimen as its president. This pleading filed by Riggs and his wife contained allegations which will be later discussed. Testimony was heard upon the issues thus joined, and the court made certain findings, which are set out in the decree from which this appeal comes, which are supported either by the undisputed testimony or by what we conceive to be the preponderance thereof, to the following effect.

On February 14, 1931, J. H. Buckley and A. M. Buckley, who are brothers, borrowed from the City National Bank, as agent, the sum of $5,000 for the specific purpose, then made known to the bank, of buying certain property then about to be sold under a partition proceeding. The Buckleys became the purchasers of the property and obtained the loan from the bank to pay for it. The loan was evidenced by five notes, each for the sum of $1,000, all dated 2-14-1931, and all falling due 2-14-32, and to secure their payment the Buckleys executed to the bank, as agent, a deed of trust covering the property thus purchased. This deed of trust recited that it was given to secure, not only the $5,000 thus loaned, but also "any and all other indebtedness that may be due or owing to the mortgagee from the mortgagor." The court found that after the execution and delivery of the notes and the deed of trust securing them, the notes—all of them—were sold by the bank to one Hank Volle, who is now the owner of the notes, and that the bank has no interest in them.

It was further found that A. M. Buckley had acquired the interest of his brother, J. H. Buckley, in the lots, and had paid the interest on the notes and had otherwise complied with the terms of the deed of trust, and that Volle, the owner of the notes and the deed of trust, is not a party to this proceeding and is not asking the foreclosure of the deed of trust or other relief, but that the bank is asking its foreclosure to secure the "other indebtedness" due it at the time the deed of trust was executed. The court found that, when said five notes and deed of trust securing them were executed on 2-14-31,

J. H. Buckley was at that time indebted to the bank in the sum of $25,900, evidenced by two notes, one for $10,000, and the other for $15,900. The court also found that when the two notes last mentioned were executed Buckley was worth a sum of money so greatly in excess thereof that security was not regarded as necessary, and none was taken, but because of the decline in values, then in progress, the bank, on August 1, 1931, took a mortgage from J. H. Buckley on a large amount of real property.

The court found that, as the bank had no interest in the five notes of J. H. and A. M. Buckley owned by Volle, it had no right to foreclose the deed of trust given to secure them in satisfaction of other indebtedness due by J. H. Buckley to the bank, and that the count praying its foreclosure for that purpose should be dismissed for want of equity. There is no appeal by any one from that part of the decree.

It was further found that on August 1, 1931, J. H. Buckley, being indebted to the bank in the sum of $10,000, evidenced by ten notes each for $1,000, all dated August 1, 1931, and all due August 1, 1932, executed a mortgage to the bank upon six parcels of real estate. The bank sold all ten of these notes except note No. 7, which it still owns. Note No. 5 was sold to J. A. Riggs and his wife, and the decree ordered the foreclosure of the mortgage to enforce the payment of all ten notes. The bank had made a collection of $587.80, hereinafter referred to, and it was ordered that this sum be credited upon the ten notes ratably.

It was further decreed that the balance due the bank from J. H. Buckley, then unpaid, amounting to $18,400, but which was not specifically named in the mortgage as being secured by it "is subordinate to the claim of the plaintiffs above named whose notes are named in the mortgage." In other words, the holders of the ten notes for a thousand dollars each had a lien upon the land described in the mortgage to secure their payment which was superior to any lien which the bank might have for any other debt due it, and it was provided that the owner

of each of these ten notes "has the right to bid at said sale [foreclosure sale by the commissioner] and to purchase the property, and, in the event that the property is purchased by any of the plaintiffs, said plaintiff will not be required to give bond for the proportionate amount of the said plaintiff's judgment against said property."

The cross-complaint filed by Riggs and wife against the bank and Nakdimen contained allegations to the following effect: They had for a number of years been depositors of the bank, and were accustomed to advise with Nakdimen about their investments, and had on a number of occasions bought notes owned by the bank on Nakdimen's recommendation. They bought note No. 5 for $1,000, hereinabove referred to, for its face value and accrued interest, upon the representation of Nakdimen that it was secured by a first mortgage lien upon valuable lands located in Fort Smith, when it was not in fact so secured. They allege the insufficiency of security to pay all ten of the thousand dollar notes, and they pray judgment against the bank and Nakdimen for the amount of their note No. 5.

It will be remembered that there has been no sale under the decree of foreclosure, and we do not, therefore, know to what extent, if any, the owners of note No. 5 will be damaged by reason of their purchase thereof. J. H. Buckley testified that the fair market value of the lands described in the mortgage dated August 1, 1931, was on that date $37,000, and a real estate dealer who has no interest in the litigation placed the value on the same date at the sum of $56,600. It does not appear just when note No. 5 was sold, it being alleged that it was sold on the ................... day of ......................................, 1931.

Dr. J. H. Buckley testified that he had been adjudged a bankrupt at the time his deposition was taken. He also testified that on August 1, 1931, he owned stock in a corporation then worth $16,000, which he could have sold a year earlier for $28,000, but which was worthless at the time of giving his testimony, but he thought he was worth fifty to sixty thousand dollars net on August 1, 1931.

The ten one thousand-dollar notes were written on blank forms across the back and face of which there was

printed the words "Real Estate First Mortgage Coupon Note," but these words were not written into the body of the note. J. A. Riggs testified that he supposed the mortgage was a first lien upon all the lands which it described, but he did not testify that Nakdimen made that representation. He did testify that Nakdimen "told me there was a mortgage on all Dr. Buckley's property, and I accepted it on that recommendation."

Riggs made no inquiry or investigation as to whether the mortgage was a first lien on all the property which it described until after Buckley had been adjudged a bankrupt, when he "ran the records," as he expressed it, and found that upon parcel No. 4 of the land there was a first mortgage to Charlie Jewett, securing a loan of $10,500, and that the land had been sold at the foreclosure sale of that mortgage to Jewett for $5,000, and that as to parcel No. 6 Buckley owned only an undivided one-fifth interest, which was sold with the other interests at a partition sale, and that Buckley's interest brought at this sale only $587.80. This is the sum above referred to which the court ordered credited upon the ten notes ratably.

In testifying about the mortgaged property and its value, the witnesses referred to the various lots as parcels Nos. 1, 2, 3, 4, 5 and 6, and we shall employ the same descriptions. Parcel No. 6 was not valued by Dr. Buckley in his estimates of value, but he placed a value of $14,000 on parcel No. 4, which, if deducted from his total estimate, would leave a remaining value of $23,000, and witness Little valued parcels 4 and 6 at $35,000, and, if these values are deducted from his total estimate, $21,600 remains.

It is not contended that Nakdimen made any specific representation as to the extent of Buckley's interest in any of the parcels of land, but only that he represented that the mortgage covered all of Dr. J. H. Buckley's land. This representation was not false, but was true. Nor is it contended that Nakdimen made any representation that the mortgage constituted a first lien on all the parcels of land which it described. Riggs' impression that it did appears to have been based upon the printed

words appearing upon the face and back of the note reading "Real Estate First Mortgage Coupon Note."

Riggs and his wife do not own any of the five notes referred to in count No. 1 of the original complaint, and are not, therefore, interested in that mortgage. But the circumstance of its execution does tend to show the good faith of the bank and its president, for that loan was made only about six months before the mortgage dated August 1, 1931, was taken, and no security for the five thousand dollar loan was given except only a mortgage upon the land which that money was borrowed to buy.

In this connection, it may be said that, while the adjudication of Dr. J. H. Buckley to be a bankrupt is conclusive evidence of his insolvency, it does not follow that Riggs and his wife will sustain a loss by reason of their purchase of the note. It was decreed that the mortgage of August 1, 1931, secured first the ten notes of a thousand dollars each, and that any security for the remaining debt due by Buckley to the bank was subordinate thereto, and the bank has not appealed from that decree, and if the property shall sell at the commissioner's sale for even half what its market value was represented to be on August 1, 1931, all ten of the thousand dollar notes will be paid in full. There is therefore no showing that the note owned by Riggs and his wife is worthless, or that it is worth less than its face value, and for this reason, if for no other, the court was justified in dismissing —as it did—the cross-complaint of Riggs and his wife against the bank and Nakdimen as being without equity. *May* v. *Dyer,* 57 Ark. 441, 21 S. W. 1064.

Moreover, we do not think there was shown to exist any such confidential relation between Riggs and Nakdimen as the representative of the bank which would justify Riggs in failing to exercise an intelligent judgment in purchasing the note. *Cherry* v. *Brizzolara,* 89 Ark. 309, 116 S. W. 668. A reading of the note itself would have shown that it did not recite that it was secured by a first mortgage on all the lands described in the mortgage. On the contrary, the recital of the note in this respect, which appears just above the signature of the makers, is that

"This note is secured by property in the city of Fort Smith," which recital was true. Nakdimen was not asked and did not state that the mortgage here sought to be foreclosed was a first mortgage upon all of the lands described therein, but stated only that the mortgage described all the lands which Dr. Buckley owned, and that statement was not shown to be false.

There is no contention that there was any guaranty of the payment of the note. On the contrary, when the note was sold to Riggs and his wife, it was indorsed as being transferred "without recourse."

It appears to be a fact that the mortgage was a first lien upon five of the six parcels of land, and this lien, under the decree of the court, secures first the ten one thousand dollar notes, and none of the proceeds of the foreclosure sale may be credited to the other indebtedness due the bank until these notes have been first paid.

We find no testimony in the record to sustain an action for deceit by showing a lack of good faith and the making of false and fraudulent representations, and the decree of the court must therefore be affirmed, and it is so ordered.