(103 N .W. 632.)

---

CHARLES L. BENESH, JR., v. THE TRAVELERS' INSURANCE COMPANY.

Opinion filed January 11, 1905.

**Equity Will Reform or Rescind a Contract for Mistake as Circumstances Require.**

1. The defendant, by a mortgage foreclosure, had acquired title to real property formerly owned by plaintiff's father, and the defendant agreed to let the plaintiff buy that property back, and to make a written contract to that effect, whereby the purchase price was to be paid in installments and deed to be delivered when the payments were completed. By mistake of defendant's agent, more land was described in the contract than the foreclosure covered. *Held,* that there was a mistake, for which equity would either reform or rescind the contract, as circumstances might require.

**Mistake — Means of Knowledge.**

2. Mere omission to resort to "means of knowledge" which would have obviated the mistake, where there is no neglect of legal duty, does not bar relief for mistake.

**Modification of Contract.**

3. When the defendant discovered the mistake, it proposed to plaintiff that the mistake be corrected by the acceptance of a deed for that part of the property only which the foreclosure covered. The plaintiff made no direct answer, but paid the remainder of the purchase price, and accepted the deed offered by the defendant, and his conduct, after defendant's proposal until the delivery of the deed, was calculated to induce the belief that he assented to defendant's proposal, and to cause the latter to forego resort to equitable relief. *Held,* that plaintiff will not be permitted to deny acceptance of defendant's proposal to modify the contract.

**Parol Modification by Executed Agreement.**

   4. The parol modification of the written contract, followed by the delivery and acceptance of the deed in accordance therewith, constituted   an   alteration of the written contract by an executed parol agreement.

**Executed Parol Agreement — Action for Breach.**

   5. The executed parol agreement was, in effect, a reformation of the written contract with respect to the land to be conveyed, and was a complete satisfaction of the contract as so reformed, which relieved the defendant from liability for breach of contract.

Appeal from District Court, Richland county; *Lauder,* J.

Action by Charles L. Benesh, Jr., against the Travelers' Insurance Company.   Judgment for plaintiff and defendant appeals.

Reversed.

*John E. Greene,* for appellant.

*Purcell & Bradley,* for respondent.

ENGERUD, J.   This is an appeal by defendant from a judgment for plaintiff in an action to recover damages for the breach of a contract to convey real property.   The complaint alleges, in substance, that on April 19, 1897, defendant made a written contract with the plaintiff to convey to the latter, for the sum of $1,500, payable in installments, the west half of lot 13, in block 17, and lots 8, 9, 10 and 11, of block 16, of the original townsite of Wahpeton, deed to be delivered on completion of the payments, but the purchaser to have possession of the premises from the date of the contract.   It alleges that the purchase price had been fully paid on or about November 22, 1902, and all other terms and conditions of the contract complied with by plaintiff; but that the defendant refused to convey the lots in block 16, and had no title thereto, and demands $1,200   damages.   The answer admits the execution of the written contract; the payment of the purchase price; refusal of the defendant to convey the south three-fourths of the lots in block 16, because it never had title to that part of said lots.   It alleges that on December 24, 1902, the defendant delivered to the plaintiff a deed, and thereby conveyed to him a clear title to the west half of lot 13 in block 17, and the north one-fourth of the lots in block 16, and that the plaintiff accepted   and   retained   the   same.   It further alleges that when the contract was made it was the in-

tention of both parties to contract for the sale and purchase of the property described in the deed, and that plaintiff knew that defendant owned only that part of the lots described in the deed and intended to convey no other part thereof; but by mistake of both parties the property was erroneously described in the written contract; that plaintiff was informed of the error before the purchase price was fully paid, and made the remaining payments and accepted the deed with the knowledge that defendant would convey only the premises described in the deed. The issues were submitted to a jury. Defendant's motion for a directed verdict was denied, and the jury found for plaintiff in the sum of $1,100. A motion for a new trial on a statement of the case was overruled.

The principal point relied upon for reversal is the insufficiency of the evidence to justify the verdict, and presents the same questions as were involved in the motion to direct a verdict. The facts disclosed by the evidence are as follows: The plaintiff's father was at one time the owner of the property described in the contract of sale. He mortgaged the lot in block 17 and the north one-fourth of the four lots in block 16 to the defendant for a loan of $800. The mortgage was recorded and contained the usual power of sale. This mortgage was foreclosed by advertisement, and the property covered by the mortgage was sold at the foreclosure sale February 17, 1894, to the defendant, for the full amount of the debt. No redemption was made, and defendant received a sheriff's deed of the premises September 9, 1895. The sheriff's deed and all the papers evidencing the foreclosure were duly recorded, and the premises sold are therein described as in the mortgage, so that the record at the time of the transaction in question showed that the defendant held title to the north one-fourth only of lots 8, 9, 10 and 11 in block 16, and the west half of lot 13 in block 17. The plaintiff's father had a house and blacksmith shop on that part of the lots covered by defendant's mortgage, and for some reason, not disclosed by the evidence, had been permitted to remain in possession of the property after the expiration of the time for redemption. The lots were otherwise unoccupied. In the spring of 1897 the father had apparently been in communication with the defendant's agent at Fargo with a view to buy back the property lost by the foreclosure. He then requested his son, the plaintiff, to purchase the same from the defendant. Pursuant to this request, the plaintiff wrote to J. B. Lockhart, who was

defendant's agent at Fargo, the following letter, dated April 14, 1897: "Send me contract of assignment and I will make payments, and what time was foreclosure made, and for what amount was it foreclosed." In reply to this letter Mr. Lockhart, on April 15th, wrote the plaintiff to the effect that he could purchase the property on the terms previously talked about between the father and Lockhart—contract for deed on payment of $1,500 and interest, payable in installments. The property is referred to as "the property in which your father lives and the shop." Among other things, the letter says: "I do not know just what you want when you say, 'Send me contract of assignment.' The title to this property in which your father lives now stands in the Travelers' Insurance Company absolutely, they having foreclosed their mortgage, the year for redemption having expired and sheriff's deed having been issued to them." On April 16th, in reply to this letter, plaintiff wrote a letter to Lockhart, offering $1,200 "for the property mentioned." On the next day, in response to this offer, Lockhart wrote the following letter: "Your favor of the 16th is received making me an offer of $1,200 for the property which was at one time owned by your father, viz., the residence on the main street of Wahpeton, together with the blacksmith shop, and I simply wish to state that when your father was in this office a short time ago, my proposition to him was as follows: That we would sell this property to you as his son, drawing the contract to you for $1,500, * * * and I simply wish to state right here that we will not sell this property for one cent less than the figure named. This is exactly the cash which the company have in this property, and the property is easily worth $800 more than this amount, and the reason I agreed to sell it to your father for this amount is owing to the fact that the company are willing to accept the actual money which they have in the property, as this is the only investment which they have in Wahpeton, * * * and if these terms are not satisfactory to you please so advise me by return mail, and I shall advise your father at once that we want immediate possession of the property." The plaintiff accepted the terms proposed by Lockhart. The latter prepared the contract and forwarded it to plaintiff for signature. The description of the property inserted in the writing was taken by Lockhart from the "real estate register" in his office, where the property was erroneously described as the whole of lots 8, 9, 10 and 11 in block 16,

and west half of lot 13, block 17. At the time of the negotiations plaintiff had employed one Matthews to examine the record title for him. He claims, however, that he never knew until 1902 that the defendant's mortgage and subsequent title covered only a part of the lots in block 16, and that the remainder of said lots were covered by another mortgage to one Rich, which was foreclosed shortly after the date of the contract. In the spring of 1902 the company discovered the error in the description of the property in the contract, and advised the Fargo agent thereof, and the latter, upon receipt of the information, wrote the following letter to plaintiff, dated May 14, 1902: "We write you concerning your contract with the Travelers' Insurance Company, dated April 19, 1897, for the purchase of a certain property owned by that company in the city of Wahpeton. In April, 1897, Mr. Lockhart sold you the property formerly owned by your father, namely, the residence on the main street of Wahpeton, together with the blacksmith shop. It was understood, at that time, by all parties concerned, that such property consisted of the north quarter of lots 8, 9, 10 and 11, in block 16, and the west half of lot 13, in block 17, in the original townsite of Wahpeton, the consideration being $1,500 with interest at 8 per cent per annum. The company is now ready to make conveyances to you of this property, upon the payment of the balance due upon the contract, and they desire to know if you are ready to settle on that basis and to accept the deed. An immediate reply will greatly oblige." The plaintiff immediately made the following reply: "Your favor of the 14th at hand. In reply state that I will be up to Fargo next week and will fix the matter up." At that time the unpaid part of the purchase price was about $560. The plaintiff did not go to Fargo to "fix up," and nothing more was said by either party as to the error in the description. The defendant's agent wrote the plaintiff repeatedly, requesting an immediate settlement, and informing him that the deed was ready for delivery, and in response to plaintiff's inquiries informed him of the amount due on the contract. The only reply plaintiff made to these repeated requests for settlement was to ask for more time and promising a speedy payment of balance due. Finally, on September 17, 1902, he sent to defendant's agent three checks, dated October 10, 25 and November 5, 1902, respectively, aggregating the amount due on the contract, less the accrued interest, and subsequently remitted the interest due. The payments were completed

November 21, 1902, and the deed, with an abstract of title, was delivered to plaintiff November 28, 1902. The deed conveyed the west half of lot 13 in block 17, and the north one-fourth of the lots in block 16. On December 17, 1902, the plaintiff returned the deed, and demanded a deed covering the whole of the lots in block 16. On December 24, 1902, the defendant's agent returned the deed to plaintiff, with the following letter: "We have your favor of the 17th instant inclosing the warranty deed from the Travelers' Insurance Company to yourself, covering the west half of lot 13, block 17, and the north quarter of lots 8, 9, 10 and 11, block 16, in the original townsite of Wahpeton. We return the deed herewith to you. This matter was all canvassed and thoroughly understood months ago, and you have held this contract and made the payments with the distinct understanding that you were to have conveyed to you only the north quarter of lots 8 to 11. If there was an error in the contract you knew it at the time it was made, because I think the correspondence with you shows that you knew that you were buying simply the property which the insurance company acquired by their foreclosure of the mortgage upon it. That being the case you have not been misled, and we shall decline to recognize any such claim as that which you now attempt to make." The plaintiff made no reply to this letter. He retained the deed, and thereupon commenced this action.

Upon these facts, which are undisputed, we have no hesitation in holding that the plaintiff is entitled to no relief. It is too clear for argument that the real agreement between the parties—the proposition upon which their minds met—was that the defendant intended to sell and the plaintiff to buy the property which the defendant had acquired by the foreclosure. The agreement was, in effect, that the son should be permitted to redeem the property which his father had lost by the foreclosure of defendant's mortgage. The writing which was intended to evidence that agreement described more land than was included in the foreclosure. It is a clear case of mistake of fact as defined by the Civil Code in section 3853, Rev. Codes 1899: "Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: (1) An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or (2) belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has

not existed." If we take the most charitable view of plaintiff's conduct, and assume that he erroneously supposed the foreclosure covered the whole of the lots in block 16, and that neither his father nor Matthews, who examined the title for him, had informed him of the truth, the mistake was mutual to both parties. Both mistakenly supposed the foreclosure included the whole of the lots in block 16. On the other hand, if plaintiff knew the truth, it is self-evident that he knew that the defendant had by mistake described too much land in the contract, and failed to inform them of.the error. In either case equity would either revise the contract, so as to make it express the real intention of the parties (Rev. Codes 1899, sections 5034-5037), or would rescind it if the minds of the parties had not in fact met upon the same terms (Rev. Codes 1899, section 5038).

It is urged that the mistake in the description was due to defendant's own negligence, in that its agent failed to examine the foreclosure papers and get the correct description. The same criticism could be made with equal propriety of plaintiff's conduct. Mere failure to avail one's self of the "means of knowledge" does not bar relief from mistake, provided there is no "neglect of a legal duty." See note to section 762, Field's Civil Code of New York, and cases cited; also Pomeroy's Equity Jurisprudence, vol. 2, section 856, and cases cited.

It is unnecessary to determine in this case whether rescission or reformation would have been the appropriate relief to which defendant would have been entitled upon discovery of the mistake, because the evidence conclusively shows that the parties agreed in effect, upon a reformation of the contract. By the letter of May 14, 1902, the plaintiff was informed of the mistake, and that defendant would not execute the contract and deliver the deed except in accordance with what it asserted was the real intention of the parties. It was a proposition which, under the circumstances, it was the duty of plaintiff to either accept or reject. His reply to that letter and his subsequent conduct cannot be interpreted, consistently with honest dealing, to be anything but an assent to the defendant's proposal to treat the contract as if it were revised to accord with the real intention of the parties. His letters and course of conduct were calculated, and there is strong reason to think were expressly designed, to induce the defendant to believe that its proposal was accepted, and consequently to forbear resort-

ing to equitable remedies for relief from its mistake. Under such circumstances he ought not to be heard to say that he did not intend to consent.

A written contract may be altered by an executed parol agreement. Rev. Codes 1899, section 3936. For the reasons stated, we hold that the evidence conclusively establishes a proposal by defendant to alter the terms of the written contract, and an acceptance of that proposal by the plaintiff. The final payments, delivery and acceptance of the deed were a complete execution of that modification of the written contract. The executed parol agreement was, in effect, a reformation of the written contract by the act of the parties so as to make it conform to their real intentions.

For the foregoing reasons it was error to deny defendant's motion for a directed verdict, and there must be a new trial.

Judgment reversed and a new trial ordered. All concur.
(103 N. W. 405.)