L. G. CROSBY *et al., Appellants,* v. JAMES W. ANDREWS *et al., Appellees.*

1. Where a bill of complaint states a case for any equitable relief, a demurrer thereto is properly overruled.

2. A deed of conveyance may be rescinded or canceled for a negligent mistake of fact that is unilateral where the negligence is not a breach of legal duty and the mistake is material and made under circumstances that render it inequitable for the other party to have the benefit thereof, even though he did not by commission or omission contribute to the mistake, and the parties were dealing at arms length and on equal footing.

3. Where the grantors in a deed of conveyance carelessly included in such deed land they had no authority to convey, and the grantee, with whom the grantors were dealing at arms length and on equal footing, reasonably should have known that the grantors had no authority to convey and did not intend to convey the land carelessly included in the deed, and upon discovering the mistake before irreparable injury to the grantee has resulted, the grantors promptly offer to do equity, there is ground for equitable relief by cancellation.

This case was decided by the court En Banc.

Appealed from the Circuit Court for Escambia County.

### STATEMENT.

The following statement was prepared by Mr. Justice SHACKLEFORD.

This is an appeal by the defendants in the court below from an interlocutory order overruling their demurrer to the bill of complaint. In view of the contentions made by the respective parties litigant, it seems advisable to set out the pleadings in full, with the exception of the formal parts. The bill, which was filed on the 6th day of January, 1910, is as follows:

"The bill of complaint of Jas. W. Andrews, R. F. Favourite, John A. Kirkpatrick, F. E. Brawner, Boykin Jones, A. M. McMillan, W. C. Dewberry, W. C. Mackey, Thos. V. Hannah, as Trustees, as hereinafter set forth, and A. M. McMillan and Mattie E. McMillan, his wife, complainants, against L. G. Crosby and Jessie E. Crosby, his wife, defendants, alleges:

1. That all of the complainants and the defendants are citizens and residents of Escambia county, Florida; that the complainant, Mattie E. McMillan is the wife of the said A. M. McMillan, and that the defendant Jessie

it to the said A. M. McMillan, his heirs and assigns, and
E. Crosby is the wife of the said L. G. Crosby.

2.  That on the 12th day of November, A. D. 1894, one
Eliza Ross conveyed to certain persons as trustees of the
Palafox Street Methodist Episcopal Church South, of
Pensacola, Florida, and their successors in office, and
their assigns forever much real estate, including the west
½ of the east ½ of Arpent Lot 30 in the Old City of Pen-
sacola, Florida.

3.  That by the laws and discipline of the Methodist
Episcopal Church South, all real estate devised to or ac-
quired by a church community, located in any town or vil-
lage, is vested in a certain unorganized body of persons
known as trustees, and their successors and assigns for-
ever, who may be authorized with the consent of the
preacher in charge, by a body of said church, meeting
four times each year, and known as the Quarterly Con-
ference, to sell any real estate belonging to the said local
church, but who cannot sell without the authority of the
said Quarterly Conference.  By the said Laws and Disci-
pline, the said W. ½ of the E. ½ of the said Arpent Lot
30, became vested in the Trustees then holding office in
the said local church, and their successors in office sub-
ject to sale by them under the direction and authority of
the said Quarterly Conference.

4.  That on the ——— day of ———————, A. D. 1903,
the said Quarterly Conference, in a regular meeting held
in the City of Pensacola, Florida, authorized, with the
consent of the Preacher in charge, the said trustees of the
said church property to sell the north 64 feet of the W. ½
of the E. ½ of Arpent Lot 30 to A. M. McMillan the com-
plainant, and thereafter, to-wit, on the 15th day of Decem-
ber, A. D. 1903, the trustees of the said church, by a due
and regular deed, conveying the title to the said lot, sold

it to the said A. M. McMillan, his heirs and assigns, and that the said A. M. McMillan caused the said deed to be recorded duly and validly, on the 16th day of December, 1903, in the Records of Deeds of the Clerk of the Circuit Court, as recorded in Book 33, at page 584, of the records of Escambia County, Florida.

5. That on the 24th day of August, 1904, the complainant, A. M. McMillan, conveyed the said property to E. D. Beggs, who on the same day conveyed a life interest in the same to the complainant, Mattie E. McMillan, with a remainder over to the said A. M. McMillan, and that on the 5th day of September, A. D. 1907, the complainant, the said A. M. McMillan, conveyed to the said Mattie E. McMillan the remainder left in him and that thereby, as complainants are advised and believe, that the whole title thereto became vested in the said Mattie E. McMillan; that the said last three mentioned conveyances have never been recorded; that neither the said A. M. McMillan, nor the said Mattie E. McMillan, nor the said E. D. Beggs have ever executed any deeds to the said property, or to any parts thereof, except as above.

6. That immediately upon the receipt of the said deed from the said trustees, the said A. M. McMillan fenced in the said property, in an enclosure embracing also the N. 64 feet of the E. ½ of the W. ½ of the said Lot 30, (which said latter parcel, to-wit: said 64 feet, had been formerly bought by said complainant), with a high and very obvious fence, and that since his said acquisition of the said North 64 feet of the W. ½ of the E. ½ he, (and his said wife, since the conveyance of it to her) have been and still are, in open and notorious possession thereof. The said North 64 feet of the E. ½ of the W. ½, as well as the North 64 feet of the W. ½ of the E. ½, and as well as the residence of the said McMillan, and his said wife, adja-

cent to the said Lot 30, were embraced in and conveyed by the said three last mentioned conveyances.

7. That on the ———— day of ——————, A. D. 1906, the said Quarterly Conference of the said church at a meeting, held duly and regularly in the city of Pensacola, authorized a committee of said Conference to sell the said property, derived as aforesaid, from the said Ross, the appointment of said committee being as follows, to-wit:

'The following committee was appointed to sell the said Ross property, so that the proceeds could be loaned out: Rev. W. Q. Vreeland, A. M. McMillan, J. R. Saunders and J. N. Andrews.'

8. That the defendant L. G. Crosby, had, for a long time prior to the appointment of the said committee, been engaged in the manufacture of soda water on the E. ½ of the W. ½ of the said Arpent Lot 30, and was well acquainted with the existence of the fence aforesaid, separating the N. 64 feet of the W. ½ of the E. ½, and of the E. ½ of the W. ½ from the remainder of the said lot; that at or about the time of the appointment of the said committee the said L. G. Crosby became desirous of buying the property of the trustees in the said Lot 30, and to that end negotiated with J. N. Andrews, one of the committee mentioned in the said appointment hereinbefore set out.

9. That thereupon the said Andrews communicated to the other members of the said committee the desire of the said L. G. Crosby and his willingness to pay $1,000.00 therefor, saying to them that what the said Crosby desired was to buy, at the said price, the Ross property on Chase street, in the city of Pensacola, belonging to the church; that the only property on Chase street in the said city belonging to the church was the W. ½ of the E. ½ of the said Arpent Lot 30, aforesaid, less the North 64 feet there-

tofore sold to the said A. M. McMillan, as hereinbefore set forth; that thereupon the said committee authorized him, the said Andrews, to prepare the deed to the said property, and procure the trustees to execute the same; whereupon the said Andrews did prepare a deed to the whole W. ½ of the E. ½ of the said lot 30, and presented it to each of the Trustees of the said church then holding the legal title to the said part of the lot not theretofore sold to the said McMillan, saying to each of them, substantially that it was to the Ross Lot on Chase street, belonging to the church, which the committee aforesaid had been authorized to sell; that relying upon the said statement, the said trustees, and each of them, omitted to read the description contained in the said deed or to make a verification of the statement of the said Andrews and therefore executed the said deed.

10.   That at the time of the execution of the said deed by the said trustees, they and each of them, knew that the Board of Trustees of the said church had already conveyed to the said A. M. McMillan the North 64 feet of the W. ½ of the E. ½ of the said Arpent Lot 30, and did not intend to convey to the said Crosby the said North 64 feet, and would not have executed the said deed if they had known that the description therein contained embraced the said North 64 feet, and that they did execute the same only because of their reliance upon the statement of the said J. N. Andrews aforesaid, and that the said committee accepted the offer of the said L. G. Crosby, believing and understanding it to be for the W. ½ of the E. ½ of said lot, after excluding therefrom the North 64 feet already theretofore sold to the said A. M. McMillan.

11.   That the complainants are informed and believe, and therefore aver, that the said L. G. Crosby claims that although he knew of the fence separating the north

64 feet of the said portion of said lot from the remainder thereof, yet, that he did not know that the north 64 feet thereof had been sold to the said A. M. McMillan, and made his offer for $1,000.00 and negotiated for the whole of the W. ½ of the E. ½ and intended to buy the whole of the W. ½ of the E. ½ aforesaid, and did not know that the trustees aforesaid intended to sell only the part of the said lot, less the said north 64 feet. A copy of the said deed is hereto attached, marked exhibit 'A' and prayed to be made a part hereof.

12.    That, however, shortly after making the said deed, the said L. G. Crosby became aware that the said A. M. McMillan and his wife were in possession of the said north 64 feet, and during the month of November, 1906, demanded the possession thereof from the said A. M. Mc-Millan, and correspondence ensued between them, copies of which are hereto attached, marked exhibits 2, 3, and 4, and prayed to be made a part hereof. After the said L. G. Crosby had become informed of the conveyance aforesaid, of the north 64 feet to the said A. M. McMillan, he, the said L. G. Crosby, began an erection upon the part of the said W. ½ of the E. ½ of the said lot other than the north 64 feet and has since completed and occupied, and now occupies the same, as a soda water factory; that the said A. M. McMillan and his wife have, at all times, before the conveyance to the said L. G. Crosby, and at the time of the said conveyance, and since, had as aforesaid, the said north 64 feet enclosed by a high and very visible fence, and occupied the same.

13.    That upon the ascertainment by the Board of Trustees of the said church of the mistake aforesaid, and the possession of said Crosby, they offered to return the $1,000.00 purchase price paid by him for the said property, with interest at the rate of eight per cent. per annum

from the date of the payment by him and the actual cost of all improvements which he had put upon the said property, provided that he should deed back to the trustees the property sold him, by quit-claim deed to that part sold to A. M. McMillan, as aforesaid, and a warranty deed to the remainder; but that the said Crosby declined the said proposition, and declined any proposition whatever which did not involve the surrender to him by the said McMillan of the north 64 feet aforesaid; that the said trustees, complainants have always been willing and hereby offer, to settle with the said L. G. Crosby upon the basis of re-paying him the said purchase price and interest at eight per cent. per annum, and all sums expended by him in and about the building and improvements upon the said lot; or, if the court shall so decree, to pay to him such proportion of the purchase price paid by him for the whole of the W. ½ of the E. ½ of said lot as the value of the north 64 feet thereof bore, at the time of the said sale, to the value of the whole of the said W. ½ of the E. ½ with interest, or to do whatever in equity this court may decree in the premises.

14.   That although the negotiations between the Board of Trustees and the said L. G. Crosby, which resulted in the deed from them to him of the W. ½ of the E. ½ of the said Arpent Lot 30, did not embrace any obligation upon the part of the said Trustees to bind themselves by any personal covenants in the said deed and although in the absence of said covenants they were not, as complainants are advised, believe and aver, bound to insert such covenants, and although they did not intend to bind themselves personally by any covenants, yet, when the said deed from the said trustees to the said L. G. Crosby was presented to them, each of them failed in the execu-

tion of it, to notice that it was on a printed form, whereby they bound themselves personally by the covenants of warranty although they had not contracted so to do, and although they would not have done so, except in their omission to read the said deed, and to understand that it, by its terms, did so bind them.

15.   That although, as aforesaid, the said L. G. Crosby, immediately after the making of the conveyance to him by the trustees as aforesaid, became aware that they had by mistake conveyed to him the North 64 feet aforesaid, already conveyed by them to the said A. M. McMillan, and although the trustees made to him the offer aforesaid, and although the said A. M. McMillan offered him, before he began to build on any part of the said lot, to pay to him the value of the North 64 feet aforesaid, upon the basis of the purchase price paid by him for the lot described in the deed aforesaid, yet that the said L. G. Crosby insists that although the said A. M. McMillan did not in executing the deed to him the said Crosby, intend to convey the property which he himself had theretofore purchased, he, the said McMillan, by executing the same has technically estopped himself from asserting any title thereto, and he, the said L. G. Crosby, on the ———— day of ———————— A. D., ———, brought in the law side of this Honorable Court, in Escambia County, Florida, an action in ejectment to recover from the complainants, A. M. McMillan and Mattie E. McMillan, his wife, the said North 64 feet, and that the said cause is now pending, and will be tried on the 10th day of January, 1910, if the trial thereof be not enjoined according to the prayer hereinafter written.

16.   That the complainants, denominated trustees hereinbefore are the trustees by due and regular course of succession, holding title to the property, and entitled, as

such trustees, to enforce the rights of the said church to the relief herein prayed; and that the name of the church aforesaid, for which they are trustees, has been, since the conveyance of the said lot to the said L. G. Crosby changed from the Palafox Street Methodist Episcopal Church South, of Pensacola, Florida, to the First Methodist Episcopal Church South, of Pensacola, Florida.

To the end, therefore, that the defendants L. G. Crosby and Jessie E. Crosby, may to the best and utmost of their knowledge, remembrance, information and belief, full, true, direct and perfect answers make, (but not under oath, their oaths being hereby expressly waived); and that this Honorable Court may decree that there never was any contract of sale between the Board of Trustees of the said Palafox Street Methodist Episcopal Church South, and the defendant L. G. Crosby, for the sale by them to him of the W. ½ of the E. ½ of Arpent Lot 30, in the Old City of Pensacola, Florida, and may decree that the deed purporting to convey the said W. ½ of the E. ½ of the said Arpent Lot 30, may be cancelled, upon the payment by the complainants of such equitable sum to the said L. G. Crosby as this Honorable Court may decree, or this court may decree, conveyance to the complainants as trustees, of the North 64 feet of the W. ½ of the E. ½ of the said Arpent Lot 30, upon the payment by them to him of the value of the North 64 feet at the time of the conveyance thereof to him, upon the basis of the amount paid by him for the whole of the said W. ½ of the E. ½, with interest from said time to the date of the said payment to him; and that the portion of the deed from the said trustees to the said L. G. Crosby constituting personal covenants of the said trustees should be cancelled, and that the said L. G. Crosby shall be perpetually enjoined from prosecuting the suit in ejectment

hereinbefore mentioned, against the said A. M. McMillan and wife, and from instituting and prosecuting any other or further suit against them therefor; and that pending this suit, a preliminary injunction may be issued, restraining them as hereinbefore prayed.

And that the complainants may have such other and further relief as in the premises may seem meet and just.

The complainants pray process of subpœna to the defendants L. G. Crosby and Jessie E. Crosby, returnable according to law and the course of this Honorable Court. And complainants will ever' pray."

The bill is sworn to by A. M. McMillan, one of the complainants, and the exhibits referred to in the bill as being attached thereto are as follows:

## "Exhibit 'A'.

State of Florida,
Escambia County.

Know all men by these presents that we, James W. Andrews, J. A. Kirkpatrick, R. F. Favourite, F. E. Brawner, A. M. McMillan, J. E. Wolfe, Boykin Jones, J. R. Saunders, W. C. Dewberry, Trustees Palafox M. E. Church, Pensacola, Fla., for and in consideration of the sum of one thousand ($1,000.00) dollars to us in hand paid by L. G. Crosby the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto the said L. G. Crosby, his heirs and assigns forever, the following described real estate situate, lying and being in Pensacola, County of Escambia, State of Florida, to-wit:

The west half of the east half of Arpent Lot Thirty (30) Old City on the north side of Chase street, east of Tarragona according to plans of the Old City of Pensacola.

Together with the improvements thereon, and the hereditaments and appurtenances thereunto belonging or in anywise appertaining:  To Have and To Hold the said above described premises unto the said L. G. Crosby, his heirs and assigns forever, free from all exemption or homestead right or claim of us, the said grantors, if any such right or claim we possess.  And we the said grantors for ourselves and our heirs do covenants with the said grantee, his heirs and assigns, that we are well seized of the said property and have a good right to convey the same; that it is free from any lien or incumbrance in law or equity, and that said grantors shall and will warrant, and by these presents forever defend the said premises unto the said grantee, his heirs and assigns, against the lawful claims of all and every person or persons whomsoever.

In testimony Whereof we have hereunto set our hands and seals this 12th day of November, 1906.

|  |  |
|---|---|
| Jas. W. Andrews. | (Seal.) |
| John A. Kirkpatrick | (Seal) |
| R. F. Favourite | (Seal) |
| F. E. Brawner | (Seal) |
| A. M. McMillan | (Seal) |
| J. Emmet Wolfe | (Seal) |
| Boykin Jones | (Seal) |
| J. R. Saunders | (Seal) |
| W. C. Dewberry | (Seal) |

Signed, sealed and delivered
in the presence of:

| J. N. Andrews | as to all except |
| Willie L. Morgan, Jr. | J. Emmet Wolfe |

| H. Clay Crawford | as to J. Emmet |
| Jefferson Bell | Wolfe. |

State of Florida,
Escambia County.

This day before the undersigned personally appeared J. W. Andrews, J. A. Kirkpatrick, R. F. Favourite, F. E. Brawner, A. M. McMillan, Boykin Jones, J. R. Saunders, W. C. Dewberry, Trustee, to me well known to be the individuals described in and who executed the foregoing deed of conveyance and acknowledged that they executed the same for the uses and purposes therein expressed.

In Testimony Whereof I have hereunto set my hand and affixed my official seal this 12th day of November, A. D., 1906.

(Notarial Seal)          J. N. Andrews, Notary Public.
My Commission expires June 13, 1908.

State of Florida,
Leon County.

This day before the undersigned personally appeared J. Emmet Wolfe, Trustee, to me well known to be the individual described in and who executed the foregoing deed of conveyance and acknowledged that he executed the same for the uses and purposes therein expressed.

In Witness Whereof I have hereunto set my hand and affixed my official seal this ninth day of November, A. D., 1906.

W. M. McIntosh Jr.
(Notarial Seal)      Notary Public, State of Florida.
My commission expires April 27, 1908.

### Exhibit 2.

Pensacola, Fla., December 3rd, 1906.
A. M. McMillan, Esq.
      City.
Dear Sir:

With reference to the west half of the east half of Ar-

pent Lot 30, Old City, which I purchased from yourself and others, Trustees Palafox M. E. Church, I beg to state that I have been advised by my attorneys that you are estopped from asserting any adverse claim to the same by reason of your having joined in the execution of the deed to me. I am sorry the misunderstanding arose, but I bought it for a specific purpose and have contracted to erect a building on it, and will need the full depth of the lot for the purpose of erecting this building; by refusing to give me possession of the north end thereof, you are putting me to great inconvenience and a large expense. I trust you will take a reasonable view of the matter and put me in possession of this portion at once, but if you do not do so, I will be compelled to bring suit. Kindly investigate the matter and let me know at once what you intend doing about it.

Yours very truly,

(Sdg) L. G. Crosby.

EXHIBIT 3.

Pensacola, Fla., Dec. 6, 1906.

L. G. Crosby, Esq.,
        City.
Dear Sir:—

Yours of December 3rd is at hand. I regret very much the situation which has arisen in reference to the north 64 feet of the west half of the east half of Arpent Lot 30, Old City, but I am advised that there is no estoppel arising against me from my signing the deed of the Trustees to you. I am advised that there are several reasons for this position, among which I will mention the fact that my deed from the Trustees was of record, and that I had possession of this piece of property in dispute by a very high and obvious fence and that if you did not know of the fact

that it had been conveyed to me, such want of knowledge was by reason of your own negligence and not by reason of any act of mine.

· I will add that about two years ago I conveyed this property in trust, to Judge E. D. Beggs, and he conveyed a life estate in it to my wife, with remainder over to me and my heirs. Of course, my action even if estopped upon me was not an estoppel upon my wife, who would have a life estate and be entitled to retain it until her death which would effectually prevent me from acceding to your request, to put you in possession of it. I am also advised that the making of a deed to you conveying this property was a mistake not based upon a contract between you and the Trustees for they thought that they were selling one thing, and you thought that you were buying another, and consequently your minds did not meet and no contract was made.

As I have said the situation is regretable and I on behalf of the Trustees offer to return to you the consideration which you paid for the property, receiving a deed from you, or if you prefer to abate the purchase price which you paid by the proportionate value of the 64 feet upon your making a deed back to the Trustees for the 64 feet.

Please let me know at once whether this will be satisfactory to you.

Yours very truly,

EXHIBIT 4.

Pensacola, Florida, Dec. 8, 1906.
Mr. A. M. McMillan, Esq.
    City.
Dear Sir:
    I have your favor of even date, and regret to say that I

cannot entertain such proposition as you make. I purchased the west ½ of east ½ of Arpent Lot Thirty, Old City, for a specific purpose and request give me immediate possession of same, as I look to you for protection, from your warranty on such property.

Yours truly,

Dict MEB                         (Sgd) L. G. Crosby."

On the 11th day of January, 1910, was filed a restraining order, in accordance with the prayer of the bill, which was granted by the Circuit Judge for the Third Judicial Circuit, the Judge of the First Judicial Circuit being disqualified.

On the 18th day of January, 1910, the defendants interposed the following demurrer to the bill:

"These respondents, L. G. Crosby and Jessie E. Crosby, his wife, by protestation, not confessing or acknowledging all or any of the matters and things in the complainants' bill to be true in such manner and form as the same are therein set forth and alleged, demur to the said bill, and for causes of demurrer show:

1: That the complainants have not in and by the said bill made or stated such a case as does or ought to entitle them to the relief prayed for or any relief against these respondents or either of them.

2: That it appears by the complainants own showing by the said bill that they are not entitled to the relief prayed by the bill against these respondents.

3: That it appears from the bill of complaint that the intention of the respondent L. G. Crosby was to purchase the whole of the west half of the east half of Arpent Lot Thirty described in the bill, and the conveyance from the trustees to him was effectual to convey the whole of said property.

4: That it affirmatively appears from the bill that the

respondent L. G. Crosby claims that his intention was to purchase the whole of the west half of the east half of Arpent Lot thirty described in the bill, and the bill contains no allegations negativing the truth of such claim, nor tending to show that the intention, as claimed, did not exist at the time of the purchase, nor does it set up any facts estopping the respondent L. G. Crosby from insisting that the deed to him was effectual to vest the title of the whole of said property in him.

5: That it appears from the allegations of the bill that the record title to the north sixty-four feet was in A. M. McMillan at the time of the conveyance to the respondent L. G. Crosby and that by the said conveyance the said McMillan and all the other Trustees covenanted personally to warrant and defend the title of the said property in the said Crosby, and that, therefore, the complainants are now estopped to deny that as Trustees or individuals, the said title to the north sixty-four feet of the property described in the deed was not vested in them as Trustees.

6: That it affirmatively appears from the bill that the respondent L. G. Crosby, did not become actually aware of the possession or claim of the right of possession or title of the complainant, Mattie E. McMillan, or the complainant A. M. McMillan until after the conveyance to the said Crosby.

7: That there is nothing in the allegations of the bill to show that the complainants covenanting in the said deed were induced to do so by any false or other representations of the respondent, L. G. Crosby.

8. That it does not appear that the respondent L. G. Crosby had other notice of the possession of Mrs. McMillan than that afforded by the alleged fence built while the record title to the north sixty-four feet of the property conveyed was in A. M. McMillan.

9 : That it does not appear from the allegations of the bill that Mrs. McMillan ever had such possession of the property as to constitute notice to the respondent L. G. Crosby of her possession.

10 : That it does not appear from the allegations of the bill that upon the alleged conveyance from McMillan to Beggs and Mrs. McMillan and from Beggs to Mrs. McMillan that there was any such change of occupancy of the property as constituted notice to the defendant Crosby so as to bar him from insisting on the estoppel raised by the covenants of McMillan, together with the other Trustees in the deed from the Trustees to Crosby.

11 : That from the allegations of the bill it affirmatively appears that both A. M. McMillan and his wife and the other complainants are estopped to assert that the title to the whole of the property described in the deed did not pass to the respondent Crosby and that the complainants McMillan and wife are estopped to assert title to any of the property.

12 : That the offer alleged in the thirteenth paragraph of the bill to have been made by the trustees to the respondent was not such an offer as he was under any obligation to accept, nor does the bill make any such case as requires the respondent Crosby to relinquish his claim to any part of the west half of the east half of said Arpent Lot number Thirty.

13 : That the alleged mistakes and misunderstandings set up in the bill of complaint were not such mutual mistakes or misunderstandings participated in or brought about by the respondent L. G. Crosby as entitles the complainants to a cancellation of the deed to said Crosby or to a rescission in any particular of its terms or to any re-conveyance from the said Crosby of any of the property described.

14 : That it appears from the allegations of the bill that

the alleged mistake on account of which rescission is sought was due to the carelessness of A. M. McMillan and the other signers in Exhibit 'A' in executing said deed without reading it, and that their negligence was of such a character as to deprive them of any right to rescission.

15: That it appears from the allegations of the bill, and the prayer thereof, praying the cancellation of the covenants of warranty in Exhibit 'A' attached to the bill, necessary parties have been omitted, to-wit, J. Emmet Wolfe and J. R. Saunders, and both of whom according to the allegations of the said bill, executed the deed sought to be cancelled, and there is nothing in the allegations of the bill excusing the non-joinder of the said Wolfe and the said Saunders.

Wherefore and for divers other good causes of demurrer appearing on the face of the said bill, these respondents do demur thereto, and they pray the judgment of the court whether they should be compelled to make any other or further answer to the said bill and humbly pray to be hence dismissed with their reasonable costs in this behalf sustained."

On the 18th day of July, 1910, the following order was made :

"In this cause it is ordered by consent of the parties, that there be added as complainants to the bill of complaint, the following persons as parties complainant, to-wit:

J. Emmet Wolfe and Dudley R. Saunders, Richard B. Saunders, Mary Ida Saunders and Aubrey B. Saunders, as the only children and heirs at law of J. R. Saunders, deceased; and Dudley R. Saunders and Richard B. Saunders as administrators of the estate of J. R. Saunders, deceased; the said Aubrey B. Saunders and Mary Ida Saunders minors, suing by their next friend Dudley R. Saunders."

On the 21st day of July, 1910, the Circuit Judge for the Third Judicial Circuit made an order overruling the demurrer and allowing the defendants until the rule day in September, 1910, in which to answer the bill. From this order the defendants have entered their appeal to this court, assigning as error such ruling.

*Jones & Pasco* and *Reeves & Watson,* for Appellants;

*Blount & Blount & Carter,* for Appellees.

PER CURIAM.—The trustees of a church brought a suit to have canceled on the ground of mistake a deed of conveyance made by them to Crosby covering the whole of the west half of the east half of Arpent lot 30 when the church did not own the north 64 feet thereof, and Crosby appeals from an order overruling his demurrer to the trustees' bill of complaint.

As stated by Mr. Justice SHACKLEFORD in the opinion prepared by him: "Since the question which we are called upon to decide is the correctness of the order in overruling the demurrer to the bill, we must bear in mind that the demurrer, which is to the whole bill, operates as an admission that all the allegations in the bill which are well pleaded are true. If the bill makes any case for equitable relief, the demurrer was properly overruled. City of Miami v. Shutts, 59 Fla. 462, 51 South. Rep. 929."

This is not a case where grantors having a right to convey have by their own negligent mistake conveyed land they did not intend to convey to a grantee who had reason to suppose the grantors had a right to convey and intended to convey to him. But here it appears that the grantors were negligent in conveying but had no right to convey the north 64 feet of the W. $\frac{1}{2}$ of E. $\frac{1}{2}$ of Arpent Lot 30 and that the grantee reasonably should have known the

grantors had no right to convey and did not intend to convey the north 64 feet of the quarter lot.

A deed of conveyance may be rescinded or canceled for a negligent mistake of fact that is unilateral where the negligence is not a breach of legal duty and the mistake is material and made under circumstances that render it inequitable for the other party to have the benefit thereof, even though he did not by commission or omission contribute to the mistake, and the parties were dealing at arms length and on equal footing. See 2 Pomeroy's Eq. Jur. section 856; Calverley v. Williams, 1 Vesey Jr. 210; Benesh v. Travelers' Ins. Co., 14 N. D. 39, 103 N. W. Rep. 405; Brown v. Lamphear, 35 Vt. 252; Garrard v. Frankel, 30 Beav. 445; 6 Current Law 679. See also notes to Steinmeyer v. Schroeppel, 117 Am. St. Rep. 224.

From the allegations of the bill of complaint admitted by the demurrer there appears to be no doubt that the conveyance was made under a mistake on the part of the grantors as to the extent of the land included in the deed, and that their own carelessness caused such mistake to be made. But if the parties appear to have been dealing at arm's length and on equal footing, and the grantors had no right to convey the north 64 feet of the quarter lot, and under the circumstances disclosed by the bill of complaint the grantee should reasonably have known that the grantors had no right to convey and did not intend to convey to him the north sixty-four feet of the quarter lot, there is equity for relief. It is in effect alleged that a conveyance of the north sixty-four feet of the quarter lot was on record; that the grantee had been engaged in business on the adjoining quarter of the same half lot; that he knew that the north sixty-four feet was separated from the remainder of the quarter lot by "a high and very obvious" fence that also embraced other land of an individual; that

he offered to buy the property "belonging to the church" that the trustees of the church were authorized to sell and he took a conveyance only from the trustees. It is true the trustees gave a personal warranty, but they did not purport to convey individual property.

The carelessness of the trustees does not amount to a breach of a legal duty or bad faith towards the grantee, and could not reasonably have misled him; and the facts and circumstances that were known or should have been known by the grantee in making the purchase, are of such a nature that notwithstanding the claim that he thought he was buying the entire quarter lot, he should have known the trustees with whom he was dealing at arm's length and on equal footing had no authority to convey and did not intend to convey the north sixty-four feet of the quarter lot; and, consequently the grantee's claim is equitable. As it is alleged the trustees promptly endeavored to correct the error when discovered before irreparable injury had resulted to the grantee, and offered to do justice, a court of equity under proper proofs may in the exercise of a reasonable discretion cancel the conveyance upon the doing of complete equity by the parties asking such relief.

As there appears to be equity in the bill of complaint the order overruling the demurrer thereto is affirmed.

WHITFIELD, C. J., and TAYLOR, HOCKER and PARKHILL, J. J., concur.

SHACKELFORD, J., dissenting.

I submit the following opinion, which was prepared by me as the opinion of the court, but in which a majority of the members of the court announced that they could not concur, as representing my individual views.

A great many authorities have been cited to us by the respective parties, all of which I have examined, as well as a number of others. It seems to me that the application of some well-settled principles will prove decisive of the points presented. As has been repeatedly held by this court, it is incumbent upon a complainant to allege in his bill every fact clearly and definitely that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. The facts and circumstances upon which a complainant bases his claim and right to the relief which he seeks are matters peculiarly within his own knowledge, and he will be presumed to have stated them as strongly and favorably to himself as he could, exercising his privilege of selecting his own language in which to couch them. Hancock v. Hancock, 55 Fla. 680, 45 South. Rep. 1020, 15 L. R. A. (N. S.) 670; Knight, Norman & Co. v. Turner Cypress Lumber Co., 55 Fla. 690, 45 South. Rep. 1016; King v. Hooton & Watson, 56 Fla. 805, text 816, 47 South. Rep. 394, text 398; Gillespie v. Chapline, 59 Fla. 500, 52 South. Rep. 722. We have likewise frequently held that in a suit in equity, as well as in an action at law, every pleading, when properly attacked, is to be construed most strongly against the pleader thereof; so, in passing upon a demurrer to a bill in equity, every presumption is against the bill. Murrell v. Peterson, 57 Fla. 480, 49 South. Rep. 31, wherein prior decisions of this court will be found cited. These principles have been held to be especially applicable to bills seeking an injunction and peculiarly applicable to bills seeking the reformation of a deed or other written instrument. Knight, Norman & Co. v. Turner Cypress Lumber Co., *supra*, and cases therein cited. It is further true, as we held in Murrell v. Peterson, *supra*, that where there are contradictory or inconsistent allega-

tions in a bill, its equity will be tested by the weaker rather than by the stronger allegations, or, as we held in the opinion on rehearing in Hull v. Burr, 58 Fla. 475, 50 South. Rep. 754, any indefinite or uncertain allegations that may appear in a bill of complaint should be taken most strongly against the pleader. As we also held in Murrell v. Peterson, *supra,* a court of equity cannot grant relief when the complainant's own showing in his bill demonstrates a want of equity in his prayer.

As is stated by the appellants in their brief, which statement practically accords with that made by the appellees in their brief, "The bill prays for a decree that there never was any contract of sale and that the entire deed may be canceled, or (which in effect is a prayer for reformation) that Crosby may be required to convey the McMillan portion of the tract upon a payment to him of an amount upon the basis of the amount paid by him with interest, and that the portion of the deed containing personal covenants of warranty may be canceled, and for injunction."

It is true, as the appellees contend and as we held in Florida Southern R. Co. v. Hill, 40 Fla. 1, 23 South. Rep. 566, 74 Amer. St. Rep. 124: "Where the pleader is in doubt as to whether he is entitled to one kind of relief, or another, upon the facts alleged in a bill in equity, he may frame the prayer in the alternative, so that if he is not entitled to the one, he may obtain the other. If, in such case, upon the allegations of the bill the complainant is entitled to either kind of relief prayed, the defendant cannot demur because he is not entitled to the other; the remedy being to insist at the hearing that complainant be confined to such relief only as he is entitled to under all the circumstances of the case as then presented." Also see Murrell v. Peterson, 57 Fla. 480, text 490, 49 South. Rep. 31, text 34.

Certain well defined distinctions exist between some of the principles governing cases wherein a reformation and those wherein a cancelation or rescission of a written contract is sought, which distinctions I shall have occasion presently to notice, but certain principles are alike applicable to each class of cases. It is elementary that there must be a meeting of two minds in one and the same intention in order that there may be a contract. Knight, Norman & Co. v. Turner Cypress Lumber Co., 55 Fla. 690, text 699, 45 South. Rep. 1016, text 1019; Etheredge v. Barkley, 25 Fla. 814, 6 South. Rep. 861; Strong & Trowbridge Co. v. Baars & Co., 60 Fla. 253, 54 South. Rep. 92. As we also held in Perry v. Woodberry, 26 Fla. 84, text 90, 7 South. Rep. 483, "When parties deliberately put their engagements in writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of the engagement, it is, as between them, conclusively presumed that the whole engagement and the extent and manner of the undertaking is contained in the writing. * * * No other language is admissible to show what they meant or intended, and for the simple reason that each of them has made that to be found in the instrument the agreed test of his meaning and intention." This statement of the law we quoted and approved in Knight, Norman & Co. v. Turner Cypress Lumber Co., *supra*. Also see to the same effect Jackson v. Magbee, 21 Fla. 622; Franklin v. Jones, 22 Fla. 526; Jacobs v. Parodi, 50 Fla. 541, 39 South. Rep. 833; Griffin v. Societe Anonyme La Floridienne J. Buttgenbach & Co., 53 Fla. 801, 44 South. Rep. 342. We have also held that "while equity will reform a written instrument when by a mistake it does not contain the true agreement of the parties, yet it will only do so when the mistake is plain and the proof full and satisfactory. The writing should be deemed to be the sole expositor of the intention of the parties until the contrary is established

beyond a reasonable doubt." Knight, Norman & Co. v. Turner Cypress Lumber Co., *supra,* which cites and follows prior decisions of this court. It will be observed that in the several opinions of this court treating of the reformation of written instruments for mistake it is either directly held or necessarily implied that such mistake is the mistake of both parties to the agreement. In other words, the mistake must be mutual in order to warrant a reformation of the instrument. In so holding we are squarely in line with the great weight of authority, as the citations in our opinions from other jurisdictions will clearly show. I would again refer to Citizens' National Bank of Attica v. Judy, 146 Ind. 322, 43 N. E. Rep. 259. Also see 4 Pomeroy's Eq. Juris. (3rd ed.) section 1376; Ibid. Vol. 6, section 675; 34 Cyc. 907; 24 Amer. & Eng. Ency. Law (2nd ed.) 649, where a full statement of the law may be found and many cases cited in the notes. Mutuality of the mistake forms the line of demarkation between the reformation or rectification of written instruments and their rescission or cancelation. Both classes of cases come under the head of mistake, but, while mutuality of the mistake is necessary in order to warrant reformation or rectification, cancellation or rescission may be decreed where the mistake is unilateral, as the authorities already cited show. It is also true, as we have held, that equity has jurisdiction either to reform or cancel instruments obtained through fraud. Hargis v. Campbell, 14 Fla. 27, and Griffin v. Societe Anonyme la Floridienne, *supra.* But since no fraud is alleged in the bill, the question of fraud may be eliminated from our consideration. As was held in Paget v. Marshall, L. R. 28 Ch. Div. 255, "Where there is mutual mistake in a deed or contract the remedy is to rectify by substituting the terms really agreed to. Where the mistake is unilateral the remedy is not

rectification but rescission, but the court may give to a defendant the option of taking what the plaintiff meant to give in lieu of rescission." This is a well reasoned and instructive case. Also see Kerr on Fraud and Mistake (Amer. ed) page 422; 6 Pomeroy's Eq. Jur., sections 675 and 676; Mortimer v. Shortall, 2 Drury & Warren, 363; Hearne v. Marine Ins. Co., 20 Wallace (U. S.) 488, text 490, 491; Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U. S. 373, 20 Sup. Ct. Rep. 957; Prindle v. Board of Education, 115 N. Y. Supp. 888, 61 Misc. Rep. 533. It has also been held that "to justify the reformation of a deed for mistake, the mistake must have been mutual or else the result of fraud on the part of the party not mistaken, the evidence must be clear, satisfactory, and free from reasonable doubt, and the party seeking reformation must be free from negligence." Pyne v. Knight, 130 Iowa 113, 106 N. W. Rep. 505. Also see Persinger's Adm'r v. Chapman, 93 Va. 349, 25 S. E. Rep. 5, wherein it was said: "Equity will not extend its aid to one who has been guilty of culpable negligence. It requires that the party who asks relief on the ground of mutual mistake shall have exercised at least the degree of negligence which may be fairly expected from a reasonable person." This language was quoted with the prefatory statement, "It is undoubtedly true," in American Mining Co. v. Basin & Bay State Mining Co., 39 Mont. 476, 104 Pac. Rep. 525, text 527. Also see Cherry v. Brizzolara, 89 Ark. 309, 116 S. W. Rep. 668.

I must now consider more specifically under what circumstances and upon what grounds a cancellation or rescission of a contract may be had, which remedy differs from reformation or rectification, as we have seen, in that the former may be had when the mistake is unilateral. The authorities already cited discuss this matter to a certain extent. It need not be said that it requires something

more than a mere mistake of even a very material fact to the transaction in order to warrant a court of equity in decreeing the cancelation or rescission of a written contract. A clear and succinct statement of the law relating thereto may be found on page 271 of Eaton on Equity, which is as follows:

"A mistake of fact of one of the parties to a contract, as to the subject-matter thereof, cannot be relieved against in equity unless (a) the fact is material to the transaction. (b) The mistake is not due to the culpable negligence of the mistaken party. (c) The fact is one which the party who has knowledge of it is bound to disclose."

Of course this is a broad and general statement. See the discussion thereof which follows in the work cited and the authorities referred to in the notes. As is said on page 273, "Equity will not extend its aid to relieve a mistaken party who has been guilty of culpable negligence. Mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible. The party complaining must have exercised at least the degree of diligence which may be fairly expected from a reasonable person." This principle has been generally recognized and finds ample support in the reported cases. See Conner v. Welch, 51 Wis. 431, 8 N. W. Rep. 260; Grymes v. Sanders, 93 U. S. 55; Keith v. Brewster, 114 Ga. 176, 39 S. E. Rep. 850; Vallentyne v. Imigration Land Co., 95 Minn. 195, 103 N. W. Rep. 1028; Graham v. Berryman, 19 N. J. Eq. 29; Pope v. Hoopes, 84 Fed. Rep. 927; Grant Marble Co. v. Abbot, 142 Wis. 279, 124 N. W. Rep. 264. In Bidder v. Carville, 101 Me. 59, 63 Atl. Rep. 303, 115 Amer. St. Rep. 303, it was held as follows: "A court of equity may decree the rescission of a contract for a mistake which is unilateral, but the power should not be exercised against a party whose conduct has in no way contributed to or induced the mistake, and who will ob-

tain no unconscionable advantage thereby.  If a grantor gives a warranty deed of land which he does not own, under the mistaken belief that he has title thereto, the deed will not be canceled, when no fraud, falsehood, misrepresentation, or concealment on the part of the grantee is alleged.  Equity does not relieve against mistakes which ordinary care would have prevented.  Conscience, good faith, and reasonable diligence are necessary to call the powers of a court of equity into activity." A number of additional authorities may be found in the note on page 483 of 4 L. R. A.  Also see authorities cited in note on page 500 of 65 Amer. State Rep., and Judge Freeman's cogent statement.  He is speaking of reformation, but what he says is also applicable to rescission or cancelation. "If a party to a deed, mortgage, contract of insurance, or other contract, through his own negligence, signs it without knowing or understanding its contents, when he has an opportunity to do so, a court of equity will not reform it so as to make it express his alleged understanding of what it was to contain, for an error which is the result of inexcusable negligence is not a mistake from the consequences of which equity will grant relief.  The bare fact that one does not read a contract or know its contents, when he executes it, does not relieve him from it.  If he can read his contract, his failure to do so is such gross negligence that it conclusively estops him from denying knowledge of its contents, unless he was dissuaded from reading it by some trick, artifice or fraud of the other party to the agreement."  See also Eldridge v. Dexter & P. R. Co., 88 Me. 191, 33 Atl. Rep. 974; Metcalf v. Metcalf, 85 Me. 473, 27 Atl. Rep. 457; The Duke of Beaufort v. Neeld, 12 Clark & F. 248, text 286.

I have stated the general rule governing cancellation or rescission for unilateral mistake, and have cited a number

of cases wherein the same has been applied and the principles discussed. Here, as elsewhere, the reported cases are not in entire harmony. They could hardly be expected to be univocal, for judges will differ in applying an abstract principle or general rule to concrete cases, wherein the facts and circumstances are more or less variant. So it has been held that "mere negligence or omission to read or know the contents of a written instrument before execution is not necessarily a bar to cancelation thereof. Relief in such case is proper if the instrument, through mistake, fails to accomplish the purpose intended." Taylor v. Godfrey, 62 W. Va. 677, 59 S. E. Rep. 631. Also see Smith v. Owens, 63 W. Va. 60, 59 S. E. Rep. 762; Hale v. Hale, 62 W. Va. 609, 59 S. E. Rep. 1056. Other cases along the same line and to the like effect could readily be cited, but a careful consideration of the application of the principle to the different facts and circumstances disclosed in the respective cases will usually show a recognition of the general rule and the existence of special or peculiar conditions, for example, fraud, overreaching, or other unconscionable or inequitable conduct on the part of the party against whom relief is sought. See 6 Pomeroy's Eq. Jur., sections 676 and 680, and Ibid. vol. 2, section 856. I do not wish to be understood as approving all that is said in the cases which I have cited, nor do I regard them as being equipollent, but they will be found serviceable and instructive.

Having set forth the principles which I think control and govern, I must now proceed to apply them to the instant case, but before doing so I wish to call attention again to Knight, Norman & Co. v. Turner Cypress Lumber Co., *supra.* We held therein that "the *allegata* and *probata* must reciprocally meet and correspond, the issues being made by the pleadings to which the proof must be con-

fined. If the proof must be full and satisfactory in order to warrant a court of equity in decreeing the reformation of a written instrument, and such proof must correspond to and with the allegations upon which such reformation is sought, it is an obvious corollary that such allegations must likewise be full and satisfactory." Since the question which we are called upon to decide is the correctness of the order in overruling the demurrer to the bill, we must bear in mind that the demurrer, which is to the whole bill, operates as an admission that all the allegations in the bill which are well pleaded are true. If the bill makes any case for equitable relief, the demurrer was properly overruled. City of Miami v. Shutts, 59 Fla. 462, 51 South. Rep. 929.

A careful reading of the bill discloses that it fails to allege that the mistake set forth, from the consequences of which the complainants seek relief, was mutual. In fact, the bill and accompanying exhibits would seem to negative any mutuality in such mistake. The deed to the defendant, L. G. Crosby, would seem to be just such an instrument as he expected to obtain and thought that he was getting, both in the way of the land described therein and the personal covenants of the grantors therein inserted. I am unable to find any charge or allegation in the bill to the contrary. This being true, the complainants have failed to show that they were entitled to a reformation or rectification of the deed. As I have already had occasion to say, no fraud of any kind is charged against the defendants, so the question of fraud may be eliminated from our consideration. We have also seen that many authorities hold that "If one sign a written contract without acquainting himself with its contents, he is estopped by his own negligence from asking relief against its obligation, if his signature be procured without fraud." See Ferrell v. Fer-

rell, 53 W. Va. 515, 44 S. E. Rep. 187; Fulton v. Messenger, 61 W. Va. 477, 56 S. E. Rep. 830; Cape Fear Lumber Co. v. Matheson, 69 S. C. 87, 48 S. E. Rep. 111; Kansas City Packing Box Co. v. Spies,    Tex. Civ. App.    , 109 S. W. Rep. 432; Standard Mfg. Co. v. Slot, 121 Wis. 14, 98 N. W. Rep. 923, 105 Am. St. Rep. 1016; Gibson v. Brown, Tex. Civ. App.    , 24 S. W. Rep. 574; May v. Platt, 1 L. R. Ch. Div. (1900) 616, text 623. It further would seem that the complainants and the defendant, Crosby, were dealing with each other at arm's length, and that no relation of trust or confidence existed between them, therefore, neither was required in the absence of inquiry, to disclose facts which were equally within the means of knowledge of the other party. Cherry v. Brizzolara, 89 Ark. 309, 116 S. W. Rep. 668. Neither do we find wherein the bill charges or alleges any overreaching, unfair dealing or inequitable or unconscionable conduct upon the part of Crosby. The alleged mistake would clearly seem to be not only unilateral, but due entirely to the culpable negligence and inexcusable carelessness of the complainants. If any one of them had only taken the necessary time and trouble to read the deed before executing it, the mistake both in the matter of the description of the land and the personal covenants would have been at once discovered. All the facts were within reach of the complainants, and they had but to open their eyes to see them. Grant Marble Co. v. Abbot, 142 Wis. 279, 124 N. W. Rep. 264, text 268. The fact that three of the complaining Trustees, together with Rev. W. Q. Vreeland, presumably the pastor in charge of the church, were appointed as a committee to negotiate and conduct the sale of the property and that J. N. Andrews, a member of such committee, prepared the deed which was executed cannot avail. A. M. McMillan, another member of such committee, had previously purchased a portion of the lot in question from the Trustees

and had received a deed thereto, and yet, with a full knowledge of such facts, he joins with his co-trustees in executing the deed without reading it, by which was conveyed the portion of such lot which he had previously purchased, and he personally bound himself, as did his co-trustees, by covenants therein to warrant and defend the title thereto. Could grosser carelessness or more culpable negligence be well imagined? I must confess that I do not fully understand what *locus standi* McMillan as an individual and his wife have as co-complainants in the case, and it may be that their joinder as such renders the bill multifarious. Since this point is not raised I do not pass upon it, but see Murrell v. Peterson, 57 Fla. 480, 49 South. Rep. 31, and Arcadia Mercantile Co. v. Branning, 59 Fla. 428, 52 South. Rep. 588. I do not see wherein the allegations in the bill as to the outstanding but unrecorded conveyances from McMillan to E. D. Beggs, from Beggs to Mattie E. McMillan and from A. M. McMillan to her, as to which it is not alleged that the defendants had any knowledge or notice, add to or strengthen the equities of the complainants. Neither does the fact that McMillan had fenced that portion of the lot which he had purchased and taken possession thereof strengthen the case. It is not alleged that the possession of such lot had changed from McMillan to that of his wife. See Stockton v. National Bank of Jacksonville, 45 Fla. 590, 34 South. Rep. 897. Section 2589 of the General Statutes of 1906 gives the husband the care and management of the wife's property, which would entitle him to the possession thereof.

I have already protracted this opinion and must shortly bring it to a close. I cannot be expected to treat fully all the points presented and argued, so shall conclude with a few general statements relating to other points and the citation of authorities bearing thereon. Although the deed in question is signed by the trustees individually, the word

trustees not being added after their signatures, which is generally done, since the body of the deed recites that the grantors therein are trustees, such deed is good as a conveyance from the trustees and passes whatever title they have as such. Boggess v. Scott, 48 W. Va. 316, 37 S. E. Rep. 661. As to the binding force of the personal covenants and that the grantors are estopped thereby, see Bloom v. Wolfe, 50 Iowa 286; Mitchell v. Hazen, 4 Conn. 495; North v. Henneberry, 44 Wis. 306; Hitchcock v. Southern Iron & Timber Co.,    Tenn. Ch. App.    , 38 S. W. Rep. 588; Sumner v. Williams, 8 Mass. 162, 5 Am. Dec. 83; Duval v. Craig, 2 Wheaton (U. S.) 45. Also see note on page 224 of 17 Am. Dec.

Upon the question of reformation and rescission generally, the following additional authorities will be found helpful: Kennerty v. Etiwan Phosphate Co., 21 S. C. 226, 53 Am. Rep. 669; Hope v. Bourland, 21 Okla. 864, 98 Pac. Rep. 580; Benn v. Pritchett, 163 Mo. 560, 63 S. W. Rep. 1103; Dougherty v. Dougherty, 204 Mo. 228, 102 S. W. Rep. 1099.

I have given this case my most patient and careful consideration. It follows from what I have said that I have reached the conclusion that the bill not only fails to state a case for reformation or rectification, but that it likewise fails to make or state a case for cancellation or rescission, therefore the court erred in not sustaining the demurrer thereto. I think that the order appealed from should be reversed and the case remanded, with directions to sustain the demurrer to the bill.

COCKRELL, J., concurs in the foregoing dissent.